TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective Class, and potential Rule 23 Class*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:    (718) 762-1324

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
CHENG XIA WANG,
CHUNLIN ZHANG,
JUN QING ZHAO,                                             **Case No: 17-cv-00840**
BAO GUO ZHANG,
ZE JUN ZHANG a/k/a Zejun Zhang,                           **29 U.S.C. § 216(b)**
GUOYI WANG,                                                **COLLECTIVE ACTION &**
TONG WEI WU, and                                          **F.R.C.P. 23  CLASS**
ZHI QIANG LU                                              **ACTION**
*on behalf of themselves and others similarly situated*,
                                Plaintiffs,                **COMPLAINT**
                        v.
SHUN LEE PALACE RESTAURANT, INC.
        d/b/a Shun Lee Palace;
T & W RESTAURANT, INC.
        d/b/a Shun Lee West;
JOHN HWANG;
MICHAEL TONG;
BIN HU; and
WILLIAM HWANG
                                Defendants.
-----------------------------------------------------------x

Plaintiffs CHENG XIA WANG, CHUNLIN ZHANG, JUN QING ZHAO, BAO GUO

ZHANG, ZE JUN ZHANG a/k/a Zejun Zhang, GUOYI WANG, and ZHI QIANG LU

(hereinafter referred to as "Plaintiffs"), on behalf of themselves and others similarly

situated, by and through his attorney, Troy Law, PLLC, hereby brings this complaint

against Defendants SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace;

T & W RESTAURANT, INC. d/b/a Shun Lee West; JOHN HWANG; MICHAEL

TONG; BIN HU; and WILLIAM HWANG (hereinafter referred to as "Defendants").

## INTRODUCTION

1. This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

3. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after

April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331.

5. This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7. Plaintiff CHENG XIA WANG was employed by Defendants at Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

8. Plaintiff CHUNLIN ZHANG was employed by Defendants at Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

9. Plaintiff JUN QING ZHAO was employed by Defendants at Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

10. Plaintiff BAO GUO ZHANG was employed by Defendants at Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

11. Plaintiff ZE JUN ZHANG a/k/a Zejun Zhang was employed by Defendants at Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

12. Plaintiff GUOYI WANG was employed by Defendants at Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

13. Plaintiff TONG WEI WU was employed by Defendants at Corporate Defendant T & W RESTAURANT, INC. d/b/a Shun Lee West located at 43 West 65th Street, New York, NY 10023.

14. Plaintiff ZHI QIANG LU was employed by Defendants at Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022 and at Corporate Defendant T & W RESTAURANT, INC. d/b/a Shun Lee West located at 43 West 65th Street, New York, NY 10023.

**DEFENDANTS**

***Corporate Defendants***

15. Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace is a domestic business corporation organized under the laws of the State of New York with a principal address at 155 East 55th Street, New York, NY 10022.

16. SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace is a business

engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

17. SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace purchased and handled goods moved in interstate commerce.

18. Corporate Defendant T & W RESTAURANT, INC. d/b/a Shun Lee West is a domestic business corporation organized under the laws of the State of New York with a principal address at 43 West 65th Street, New York, NY 10023.

19. T & W RESTAURANT, INC. d/b/a Shun Lee West is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

20. T & W RESTAURANT, INC. d/b/a Shun Lee West purchased and handled goods moved in interstate commerce.

21. Corporate Defendants are owned and controlled by Owner/ Operator Defendants MICHAEL TONG, BIN HU, WILLIAM HWANG, and JOHN HWANG.

### Owner/ Operator Defendants

22. The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendants SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC. d/b/a Shun Lee West. As they are each individually one of the ten largest shareholders, they are individually responsible for unpaid wages under the New York Business Corporation Law.

23. Owner/ Operator Defendant MICHAEL TONG, known as "Boss" to Plaintiffs, (1) had the power to hire and fire SHUN LEE PALACE RESTAURANT, INC. d/b/a

Shun Lee Palace employees and T & W RESTAURANT, INC. d/b/a Shun Lee West employees, including Plaintiffs, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment of employees, and (4) maintained employee records.

24. MICHAEL TONG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2 and the regulations thereunder, and is jointly and severally liable with both SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC. d/b/a Shun Lee West.

25. Owner/ Operator Defendant BIN HU, known as "Boss" to Plaintiffs, (1) had the power to hire and fire SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace employees and T & W RESTAURANT, INC. d/b/a Shun Lee West employees, including Plaintiffs, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment of employees, and (4) maintained employee records.

26. BIN HU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2 and the regulations thereunder, and is jointly and severally liable with both SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC. d/b/a Shun Lee West.

27. Owner/ Operator Defendant WILLIAM HWANG, known as "Boss" to Plaintiffs, (1)

had the power to hire and fire SHUN LEE PALACE RESTAURANT, INC. d/b/a

Shun Lee Palace employees and T & W RESTAURANT, INC. d/b/a Shun Lee West

employees, including Plaintiffs, (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of

payment of employees, and (4) maintained employee records.

28. WILLIAM HWANG acted intentionally and maliciously and is an employer

pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C.

§203d, and regulations promulgated thereunder, 29 C.F.R. §791.2 and the

regulations thereunder, and is jointly and severally liable with both SHUN LEE

PALACE RESTAURANT, INC. d/b/a Shun Lee Palace and T & W

RESTAURANT, INC. d/b/a Shun Lee West.

29. Owner/ Operator Defendant JOHN HWANG, known as "Boss" to Plaintiffs, (1) had

the power to hire and fire SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun

Lee Palace employees and T & W RESTAURANT, INC. d/b/a Shun Lee West

employees, including Plaintiffs, (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of

payment of employees, and (4) maintained employee records.

30. JOHN HWANG acted intentionally and maliciously and is an employer pursuant to

FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C. §203d, and

regulations promulgated thereunder, 29 C.F.R. §791.2 and the regulations

thereunder, and is jointly and severally liable with both SHUN LEE PALACE

RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC.

d/b/a Shun Lee West.

**STATEMENT OF FACTS**

*Plaintiff CHENG XIA WANG*

31. From on or about September 2008 to May 15, 2014, Plaintiff CHENG XIA WANG was employed by Defendants to work as a deliveryman for SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

32. CHENG XIA WANG could not continue working for defendants due to a work related injury.

33. From September 2008 to August 31, 2013, Plaintiff CHENG XIA WANG worked from:

    a.  11:00 to 22:00 for eleven (11) hours each day on Sundays through Fridays for six (6) days and sixty-six (66) hours a week, with Saturday off.

34. However, from September 2008 to August 31, 2013, Plaintiff CHENG XIA WANG was required to stay after his regular hours each for an average of forty-five (45) minutes each day for three (3) to four (4) days for two and a half (2.5) hours per week.

35. From September 2008 to August 31, 2013, Plaintiff CHENG XIA WANG would not take any break.

36. As a result, from September 2008 to August 31, 2013, Plaintiff CHENG XIA WANG worked around sixty-eight and a half (68.5) hours per week.

37. From September 1, 2013 to May 15, 2014, Plaintiff CHENG XIA WANG worked from:

    b.  11:00 to 22:00 for eleven (11) hours each day on Sundays through Fridays for six (6) days and sixty-six (66) hours a week, with Saturday off.

38. From September 1, 2013 to May 15, 2014, Plaintiff CHENG XIA WANG takes turns with other deliverymen to take two (2) hours break every other day.

39. However, from September 1, 2013 to May 15, 2014, Plaintiff CHENG XIA WANG was required to stay after his regular hours each for an average of forty-five (45) minutes each day for three (3) to four (4) days for two and a half (2.5) hours per week.

40. From September 1, 2013 to May 15, 2014, Plaintiff CHENG XIA WANG would take turns with other deliverymen to take not take any break.

41. As a result, from September 1, 2013 to May 15, 2014, Plaintiff CHENG XIA WANG worked around sixty-two and a half (62.5) hours per week.

42. From on or about September 2008 to May 15, 2014, Plaintiff CHENG XIA WANG was paid six dollars ($6.00) for each hour worked.

43. At all relevant times, Plaintiff CHENG XIA WANG was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

44. Defendants never informed Plaintiff CHENG XIA WANG that they were taking tip credit towards the minimum wage.

45. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff CHENG XIA WANG his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

46. While employed by Defendants, Plaintiff CHENG XIA WANG was not exempt under federal and state laws requiring employers to pay employees overtime.

47. For all relevant times, Defendants required Plaintiff CHENG XIA WANG to use and maintain a delivery vehicle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

48. Plaintiff CHENG XIA WANG purchased a motorcycle for approximately three thousand ($3000.00) upon commencement of his employment with Defendants for purposes of delivery orders for Defendants' benefit.

49. In order to maintain the motorcycle, Plaintiff CHENG XIA WANG had to change tires three times a year and also needed to change brake pads. This regular maintenance cost Plaintiff approximately three hundred dollars ($300.00) per year. There was additionally a cost of six hundred dollars ($600.00) needed to repair the motorcycle at one point that is not otherwise factored into the usual yearly maintenance.

50. Plaintiff CHENG XIA WANG's normal route within Manhattan ran from 55th Street to 103rd Street. However, Plaintiff CHENG XIA WANG was often required to travel as far down as Chinatown, which is approximately five (5) miles away from 55th Street. Plaintiff CHENG XIA WANG made approximately 11-14 deliveries per workday that extended to similar distances past his normal route within Manhattan that ran from 55th Street to 103rd Street.

51. Defendants have failed to pay Plaintiff CHENG XIA WANG for any of the motorcycle's required maintenance and/or repair costs.

52. Defendants have failed to reimburse Plaintiff CHENG XIA WANG for the

maintenance and/or repair costs.

*Plaintiff CHUNLIN ZHANG*

53. From on or about 2006 to June 2013, Plaintiff CHUN LIN ZHANG was employed
    by Defendants to work as a deliveryman for SHUN LEE PALACE RESTAURANT,
    INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

54. Plaintiff CHUN LIN ZHANG was fired by individual defendant MICHAEL TONG.

55. From 2006 to June 2013, Plaintiff CHUN LIN ZHANG worked from:

    c.  11:00 to 22:00 for eleven (11) hours each day on Friday through
        Wednesday for six (6) days and sixty-six (66) hours a week, with
        Thursdays off.

56. However, from 2006 to June 2013, Plaintiff CHUN LIN ZHANG was required to
    stay after his regular hours each for an average of forty-five (45) minutes each day
    for three (3) to four (4) days for two and a half (2.5) hours per week.

57. From 2006 to June 2013, Plaintiff CHUN LIN ZHANG would not take any break.

58. As a result, from 2006 to June 2013, Plaintiff CHUN LIN ZHANG worked around
    sixty-eight and a half (68.5) hours per week.

59. From 2006 to June 2013, Plaintiff CHUN LIN ZHANG was compensated one
    hundred and eighty dollars ($180.00) per week in check.

60. At all relevant times, Plaintiff CHUN LIN ZHANG was also not informed of his
    hourly pay rate or any tip deductions towards the minimum wage, and he was not
    paid overtime pay for overtime work.

61. Defendants never informed Plaintiff CHUN LIN ZHANG that they were taking tip
    credit towards the minimum wage other than that four dollars ($4) of his daily tips

were going to pay an employee that helps to pack the food for deliveries.

62. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff CHUN LIN ZHANG his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

63. While employed by Defendants, Plaintiff CHUN LIN ZHANG was not exempt under federal and state laws requiring employers to pay employees overtime.

64. For all relevant times, Defendants required Plaintiff CHUN LIN ZHANG to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

65. Plaintiff CHUN LIN ZHANG purchased a bicycle for approximately two-hundred and eighty dollars ($280.00) upon commencement of his employment with Defendants for the sole purpose of delivery orders for Defendants' benefit.

66. During 2011, Plaintiff CHUN LIN ZHANG's bicycle broke down and required expensive repairs. As a result, Plaintiff CHUN LIN ZHANG purchased a new bicycle at a cost of approximately two-hundred dollars ($200.00).

67. Plaintiff CHUN LIN ZHANG spent approximately one hundred and fifty dollars ($150.00) per year for regular maintenance of the delivery bicycle. This maintenance included changing the tires, rims, and brakes.

68. Defendants have failed to pay Plaintiff CHUN LIN ZHANG for any of the bicycle's required maintenance and/or repair costs.

69. Defendants have failed to reimburse Plaintiff CHUN LIN ZHANG for the maintenance and/or repair costs.

### Plaintiff JUN QING ZHAO

70. From on or about 2008 to the present day, Plaintiff JUN QING ZHAO was employed by Defendants to work as a deliveryman for SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

71. Plaintiff JUN QING ZHAO was hired by individual defendant MICHAEL TONG.

72. From on or about 2008 to August 31, 2013, Plaintiff JUN QING ZHAO worked from:

    d.  11:00 to 22:00 for eleven (11) hours each day on Fridays through Wednesdays for six (6) days and sixty-six (66) hours a week, with Thursdays off.

73. However, from 2008 to August 31, 2013, Plaintiff JUN QING ZHAO was required to stay after his regular hours for an average of forty-five (45) minutes each day for three (3) to four (4) days for two and a half (2.5) hours per week.

74. From 2008 to August 31, 2013, Plaintiff JUN QING ZHAO would not take any break.

75. As a result, from 2008 to August 31, 2013, Plaintiff JUN QING ZHAO worked around sixty-eight and a half (68.5) hours per week.

76. From September 1, 2013 to the present, Plaintiff JUN QING ZHAO worked from:

    e.  11:00 to 21:30 with a two and a half hour break between 14:00 to 16:30 equating to eight (8) hours of worktime each day for five (5) unfixed days

and forty (40) hours a week, with two unfixed days off per week.

77. From 2008 to the present, Plaintiff JUN QING ZHAO was paid the deliverymen subminimum wage for each hour worked.

78. At all relevant times, Plaintiff JUN QING ZHAO was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

79. Defendants never informed Plaintiff JUN QING ZHAO that they were taking tip credit towards the minimum wage.

80. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff JUN QING ZHAO his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

81. While employed by Defendants, Plaintiff JUN QING ZHAO was not exempt under federal and state laws requiring employers to pay employees overtime.

82. For all relevant times, Defendants required Plaintiff JUN QING ZHAO to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

83. Plaintiff JUN QING ZHAO purchased four electronic bicycles throughout his employment with Defendants for the sole purpose of delivery orders for Defendants' benefit. The first one cost him seven hundred dollars ($700.00), the second one cost him eight hundred dollars ($800.00), the third one cost him eight hundred dollars ($800.00), and the fourth one cost him one thousand dollars ($1,000.00).

84. For the first approximately six years (2008 to 2013, inclusive) of Plaintiff JUN QING ZHAO's employment, Plaintiff paid approximately two hundred dollars ($200.00) per year for maintenance costs of the electronic bicycle.

85. For the next four years (2014 to 2017, inclusive) of Plaintiff JUN QING ZHAO's employment, Plaintiff paid approximately four hundred dollars ($400.00) per year for maintenance costs of the electronic bicycle.

86. Defendants have failed to pay Plaintiff JUN QING ZHAO for any of the bicycle's required maintenance and/or repair costs.

87. Defendants have failed to reimburse Plaintiff JUN QING ZHAO for the maintenance and/or repair costs.

### Plaintiff BAO GUO ZHANG

88. From on or about February 2011 to the July 1, 2012, Plaintiff BAO GUO ZHANG was employed by Defendants to work as a deliveryman for SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

89. Plaintiff BAO GUO ZHANG was unable to continue working for Defendants because he was injured by a car while making deliveries.

90. From on or about February 2011 to the July 1, 2012, Plaintiff BAO GUO ZHANG worked from:

      f.   16:30-23:30 for eleven (7) hours each day for five (5) days and thirty-five (35) hours a week.

91. However, from February 2011 to the July 1, 2012, Plaintiff BAO GUO ZHANG was required to stay after his regular hours each for an average of thirty (30) minutes

each day for two (2) to three (3) days for one and a quarter (1.25) hours per week.

92. From February 2011 to the July 1, 2012, Plaintiff BAO GUO ZHANG would not take any break.

93. As a result, from February 2011 to the July 1, 2012, Plaintiff BAO GUO ZHANG worked around thirty-six and a quarter (36.25) hours per week.

94. From February 2011 to the July 1, 2012, Plaintiff BAO GUO ZHANG was paid the deliverymen subminimum wage for each hour worked.

95. At all relevant times, Plaintiff BAO GUO ZHANG was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

96. Defendants never informed Plaintiff BAO GUO ZHANG that they were taking tip credit towards the minimum wage.

97. While employed by Defendants, Plaintiff BAO GUO ZHANG was not exempt under federal and state laws requiring employers to pay employees overtime.

98. For all relevant times, Defendants required Plaintiff BAO GUO ZHANG to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

99. Plaintiff BAO GUO ZHANG purchased three used bicycles for approximately one hundred dollars ($100.00) each throughout his employment with Defendants for the sole purpose of delivery orders for Defendants' benefit. The first was purchased in 2009 but broke down irreparably. The second one was purchased in early 2012 but it

was stolen, requiring the purchase of the third bicycle immediately.

100. Plaintiff BAO GUO ZHANG spent approximately four hundred dollars ($400.00) per year to repair the bicycles.

101. Defendants have failed to pay Plaintiff BAO GUO ZHANG for any of the bicycle's required maintenance and/or repair costs.

102. Defendants have failed to reimburse Plaintiff BAO GUO ZHANG for the maintenance and/or repair costs.

***Plaintiff ZE JUN ZHANG***

103. From on or about 2008 to the present day, Plaintiff ZE JUN ZHANG was employed by Defendants to work as a deliveryman for SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

104. From on or about 2008 to August 31, 2013, Plaintiff ZE JUN ZHANG worked from:

      g. 11:00 to 22:00 for eleven (11) hours each day for six (6) days and sixty-six (66) hours a week, with one day off per week. The one day off per week was not fixed but would be on a Monday, Tuesday, or Wednesday.

105. However, from 2008 to August 31, 2013, Plaintiff ZE JUN ZHANG was required to stay after his regular hours each for an average of forty-five (45) minutes each day for three (3) to four (4) days for two and a half (2.5) hours per week.

106. From 2008 to August 31, 2013, Plaintiff ZE JUN ZHANG would not take any break.

107. As a result, from 2008 to August 31, 2013, Plaintiff ZE JUN ZHANG worked

around sixty-eight and a half (68.5) hours per week.

108. From September 1, 2013 to the present, Plaintiff ZE JUN ZHANG worked from:

      h.  11:00 to 22:00 for eleven (11) hours each day on Sundays through Fridays for six (6) days and sixty-six (66) hours a week, with Thursday off.

109. From September 1, 2013 to the present, Plaintiff ZE JUN ZHANG takes turns with other deliverymen to take two (2) hours break every other day.

110. However, Plaintiff ZE JUN ZHANG was required to stay after his regular hours each for an average of forty-five (45) minutes each day for three (3) to four (4) days for two and a half (2.5) hours per week.

111. From September 1, 2013 to the present, Plaintiff ZE JUN ZHANG would take turns with other deliverymen to take not take any break.

112. As a result, from September 1, 2013 to the present, Plaintiff ZE JUN ZHANG worked around sixty-two and a half (62.5) hours per week.

113. From 2008 to the present, Plaintiff ZE JUN ZHANG was paid the deliverymen subminimum wage for each hour worked.

114. At all relevant times, Plaintiff ZE JUN ZHANG was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

115. Defendants never informed Plaintiff ZE JUN ZHANG that they were taking tip credit towards the minimum wage.

116. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff ZE JUN ZHANG his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

117. While employed by Defendants, Plaintiff ZE JUN ZHANG was not exempt under federal and state laws requiring employers to pay employees overtime.

118. For all relevant times, Defendants required Plaintiff ZE JUN ZHANG to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

119. Plaintiff ZE JUN ZHANG purchased a bicycle for approximately forty-three dollars ($43.00) upon commencement of his employment with Defendants for the sole purpose of delivery orders for Defendants' benefit.

120. Defendants have failed to pay Plaintiff ZE JUN ZHANG for any of the bicycle's required maintenance and/or repair costs.

121. Defendants have failed to reimburse Plaintiff ZE JUN ZHANG for the maintenance and/or repair costs.

### Plaintiff GUOYI WANG

122. From on or about November 2008 to July 2009 and on or about June 2010 to February 2011, Plaintiff GUOYI WANG was employed by Defendants to work as a deliveryman for SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

123. For all relevant times, Plaintiff GUOYI WANG worked from:

    i. 11:00 to 22:00 for eleven (11) hours each day for six (6) days and sixty-six (66) hours a week, with one day off per week. The one day off per week was not fixed but would be on a Monday, Tuesday, or Wednesday.

124. However, for all relevant times, Plaintiff GUOYI WANG was required to stay after his regular hours each for an average of forty-five (45) minutes each day for three (3) to four (4) days for two and a half (2.5) hours per week.

125. For all relevant times, Plaintiff GUOYI WANG would not take any break.

126. As a result, for all relevant times, Plaintiff GUOYI WANG worked around sixty-eight and a half (68.5) hours per week.

127. For all relevant times, Plaintiff GUOYI WANG was paid the deliverymen subminimum wage for each hour worked.

128. At all relevant times, Plaintiff GUOYI WANG was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

129. Defendants never informed Plaintiff GUOYI WANG that they were taking tip credit towards the minimum wage.

130. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff GUOYI WANG his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

131. While employed by Defendants, Plaintiff GUOYI WANG was not exempt under federal and state laws requiring employers to pay employees overtime.

132. For all relevant times, Defendants required Plaintiff GUOYI WANG to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

133. Plaintiff GUOYI WANG purchased a bicycle for approximately forty-three dollars ($43.00) upon commencement of his employment with Defendants for the sole purpose of delivery orders for Defendants' benefit.

134. Defendants have failed to pay Plaintiff GUOYI WANG for any of the bicycle's required maintenance and/or repair costs.

135. Defendants have failed to reimburse Plaintiff GUOYI WANG for the maintenance and/or repair costs.

**Plaintiff TONG WEI WU**

136. From on or about September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU was employed by Defendants to work as a deliveryman for T & W RESTAURANT, INC. d/b/a Shun Lee West located at 43 West 65th Street, New York, NY 10023.

137. From on or about September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU worked from:

  j. 16:30 to 22:30 for six (6) hours each day on Tuesdays, Thursdays, Fridays, and Saturdays for four (4) days and from 15:30 to 22:30 for seven (7) hours on Sundays for thirty-one (31) hours a week, with Mondays and Wednesdays off.

  k. About once a week, Plaintiff TONG WEI WU was required to work additionally from 11:00 to 16:30 for five and a half (5.5) hours.

138. From September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU would not take any break.

139. As a result, from September 20, 2009 to September 11, 2014, Plaintiff TONG

WEI WU worked around thirty-six and a half (36.5) hours per week.

140. From September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU was paid the deliverymen subminimum wage for each hour worked.

141. At all relevant times, Plaintiff TONG WEI WU was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

142. Defendants never informed Plaintiff TONG WEI WU that they were taking tip credit towards the minimum wage.

143. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff TONG WEI WU his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

144. While employed by Defendants, Plaintiff TONG WEI WU was not exempt under federal and state laws requiring employers to pay employees overtime.

145. For all relevant times, Defendants required Plaintiff TONG WEI WU to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

146. Plaintiff TONG WEI WU purchased an electronic bicycle for approximately one thousand and four hundred dollars ($1400.00) upon commencement of his employment with Defendants in September 2009 for the sole purpose of delivery orders for Defendants' benefit. However this first electronic bicycle broke down irreparably and Plaintiff TONG WEI WU purchased a second electronic bicycle for

one thousand and four hundred dollars ($1400.00) in 2011. This second bicycle also eventually broke down irreparably and Plaintiff purchased a third electronic bicycle for approximately seven hundred dollars ($700.00) in 2012.

147.  Throughout Plaintiff TONG WEI WU's employment, Plaintiff replaced the battery four times at a cost of approximately four hundred dollars ($400.00) each time. The replacement of the battery was a necessary maintenance cost of the electronic bicycle.

148.  Defendants have failed to pay Plaintiff TONG WEI WU for any of the bicycle's required maintenance and/or repair costs.

149.  Defendants have failed to reimburse Plaintiff TONG WEI WU for the maintenance and/or repair costs.

### Plaintiff ZHI QIANG LU

150.  From on or about March 2012 to December 2012, Plaintiff ZHI QIANG LU was employed by Defendants to work as a deliveryman for SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

151.  From on or about November 2014 to August 31, 2016, Plaintiff ZHI QIANG LU was employed by Defendants to work as a deliveryman for T & W RESTAURANT, INC. d/b/a Shun Lee West located at 43 West 65th Street, New York, NY 10023.

152.  Plaintiff ZHI QIANG LU was hired by individual defendant MICHAEL TONG.

153.  From on or about March 2012 to December 2012, Plaintiff ZHI QIANG LU worked from:

l.   10:30 to 21:00 for ten and a half (10.5) hours each day for three (3) days

and from 16:30 to 21:30 for five (5) hours for two (2) days a week for forty-one and a half (41.5) hours a week.

    m.  About once a week, Plaintiff ZHI QIANG LU was required to stay back and work an additional hour.

154.  From March 2012 to December 2012, Plaintiff ZHI QIANG LU would not take any break.

155.  As a result, from March 2012 to December 2012, Plaintiff ZHI QIANG LU worked around forty-two and a half (42.5) hours per week.

156.  From on or about November 2014 to August 31, 2016, Plaintiff ZHI QIANG LU worked from:

    n.  16:30 to 21:30 for five (5) hours each day on Tuesdays, Wednesdays and Saturdays for three (3) days, 18:00-23:30 for five and a half (5.5) hours on Fridays and from 15:30 to 22:30 for seven (7) hours on Sundays for twenty-seven and a half (27.5) hours a week.

    o.  In addition to his regular hours of employment, Plaintiff was required to show up earlier and work for 40 minutes performing "sidework" including cutting paper, work with soup boxes, peeling beans, and season beans.

157.  From November 2014 to August 31, 2016, Plaintiff ZHI QIANG LU would not take any break.

158.  As a result, from November 2014 to August 31, 2016, Plaintiff ZHI QIANG LU worked around thirty and eighty-three tenths (30.83) hours per week.

159.  For all relevant times, Plaintiff ZHI QIANG LU was paid the deliverymen subminimum wage for each hour worked.

160. At all relevant times, Plaintiff ZHI QIANG LU was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

161. Defendants never informed Plaintiff ZHI QIANG LU that they were taking tip credit towards the minimum wage.

162. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff ZHI QIANG LU his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

163. While employed by Defendants, Plaintiff ZHI QIANG LU was not exempt under federal and state laws requiring employers to pay employees overtime.

164. For all relevant times, Defendants required Plaintiff ZHI QIANG LU to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

165. Plaintiff ZHI QIANG LU purchased an electronic bicycle for approximately six hundred and eighty ($680.00) upon commencement of his second term of employment in November 2014 with Defendants for the sole purpose of delivery orders for Defendants' benefit.

166. Plaintiff ZHI QIANG LU's bicycle needed to be repaired frequently, often two or three times a month. These repairs cost him approximately $300 per year.

167. In early 2016, Plaintiff ZHI QIANG LU's bicycle broke down irreparably. Plaintiff then proceeded to purchase another electronic bicycle for six hundred and

eighty ($680.00) for the sole purpose of delivery orders for Defendants' benefit.

168. After purchasing the second bicycle, individual Defendant MICHAEL TONG partially reimbursed Plaintiff ZHI QIANG LU for the costs with a check in the amount of five-hundred dollars ($500.00).

169. Defendants have failed to sufficiently compensate Plaintiff ZHI QIANG LU for any of the bicycle's required maintenance and/or repair costs.

170. Defendants have failed to sufficiently reimburse Plaintiff ZHI QIANG LU for the maintenance and/or repair costs.

## COLLECTIVE ACTION ALLEGATIONS

171. Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

## CLASS ACTION ALLEGATIONS

172. Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

173. All said persons, including Plaintiffs, are referred to herein as the "Class."

174. The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

175. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

176. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

    a.  Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

    b.  Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

    c.  Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

    d.  Whether Defendants maintained a policy, pattern and/or practice of

failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e. Whether Defendants maintained policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f. Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or timely thereafter;

g. Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

h. At what common rate, or rates subject to common method of calculation was and is Defendants required to pay Plaintiffs and the Class members for their work.

### *Typicality*

177. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage compensation and/or overtime compensation. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

*Adequacy*

178.   Plaintiffs are able to fairly and adequately protect the interests of the Class and

have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys

who are experienced and competent representing Plaintiffs in both class action and

wage and hour employment litigation cases.

*Superiority*

179.   A class action is superior to other available methods for the fair and efficient

adjudication of the controversy, particularly in the context of wage and hour

litigation where individual Class members lack the financial resources to vigorously

prosecute a lawsuit against corporate defendants. Class action treatment will permit a

large number of similarly situated persons to prosecute their common claims in a

single forum simultaneously, efficiently, and without the unnecessary duplication of

efforts and expenses that numerous individual actions engender.  Because the losses,

injuries, and damages suffered by each of the individual Class members are small in

the sense pertinent to a class action analysis, the expenses and burden of individual

litigation would make it extremely difficult or impossible for the individual Class

members to redress the wrongs done to them.  Further, important public interests

will be served by addressing the matter as a class action.  The adjudication of

individual litigation claims would result in a great expenditure of Court and public

resources; however, treating the claims as a class action would result in a significant

saving of these costs.  The prosecution of separate actions by individual members of

the Class would create a risk of inconsistent and/or varying adjudications with

respect to the individual members of the Class, establishing incompatible standards

of conduct for Defendants and resulting in the impairment of class members' rights

and the disposition of their interests through actions to which they were not parties.

The issues in this action can be decided by means of common, class-wide proof. In

addition, if appropriate, the Court can, and is empowered to, fashion methods to

efficiently manage this action as a class action.

180.    Upon information and belief, Defendants and other employers throughout the

state violate the New York Labor Law.  Current employees are often afraid to assert

their rights out of fear of direct or indirect retaliation.  Former employees are fearful

of bringing claims because doing so can harm their employment, future employment,

and future efforts to secure employment.  Class actions provide class members who

are not named in the complaint a degree of anonymity which allows for the

vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

181.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

182.    At all relevant times, Defendants had a policy and practice of refusing to pay the

statutory minimum wage to Plaintiff, and the similarly situated collective action

members, for some or all of the hours they worked.

183.    The FLSA provides that any employer who violates the provisions of 29 U.S.C.

§206 shall be liable to the employees affected in the amount of their unpaid minimum

compensation, and in an additional equal amount as liquidated damages.

184.   Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.

## COUNT II.
### [Violation of New York Labor Law—Minimum Wage Brought on Behalf of Plaintiff and Potential Rule 23 Class]

185.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

186.   At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

187.   At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

188.   Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount for hours worked.

189.   An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent (25%) of the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and interest.

## COUNT III.
### [Violations of the Fair Labor Standards Act—Overtime Wage Brought on behalf of the Plaintiff and the FLSA Collective]

190.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

191.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

192.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

193.    Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay violated the FLSA.

194.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

195.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29

C.F.R. §516.4.

196.   Defendants willfully failed to notify Plaintiffs and FLSA Collective of the

requirements of the employment laws in order to facilitate their exploitation of

Plaintiffs' and FLSA Collectives' labor.

197.   Defendants knowingly and willfully disregarded the provisions of the FLSA as

evidenced by their failure to compensate Plaintiffs and Collective Class Members

the statutory overtime rate of time and one half for all hours worked in excess of

forty (40) per week when they knew or should have known such was due and that

failing to do so would financially injure Plaintiffs and Collective Action members.


**COUNT IV.**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiff and Potential Rule 23 Class]**

198.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

199.   An employer who fails to pay the minimum wage shall be liable, in addition to the

amount of any underpayments, for liquidated damages equal to twenty five percent

(25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft

Prevention Act, and interest.

200.   At all relevant times, Defendants had a policy and practice of refusing to pay the

overtime compensation to Plaintiffs at one and one half times the hourly rate the

Plaintiffs and the class are entitled to.

201.   Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

202.   Defendants' failure to pay Plaintiffs were not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay
### Brought on behalf of Plaintiff]

203. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

204. The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations §146-1.6.

205. Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VI.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of
### Bicycle/ Electric Delivery Vehicle, including Depreciation, Insurance,
### Maintenance and Repairs]

206. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

207. Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including Plaintiff's bicycles, including electric and gas bicycles.

208. Based on their personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of their personal bicycles that were used for deliveries made under employment under Defendants.

209. The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiffs to maintain the delivery vehicle in working condition.

210. Plaintiffs maintained and repaired their motor vehicle at their own expense.

211. Plaintiffs performed these deliveries for the sole benefit of the Defendants.

212. Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of replacement bicycles, replacement batteries and/or other regular maintenance of the vehicles.

213. As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for vehicle maintenance, in exchange for compensation from Defendants for such expenses.

214. Defendants have not fully compensated Plaintiffs for expenses incurred from maintenance of the vehicle and the purchase of gas. As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiffs a reasonable sum under the afore-alleged facts.

215. Defendants owe Plaintiffs their overdue costs incurred from delivery vehicles.

## COUNT VII.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Motor Vehicle, including Depreciation, Insurance, Maintenance and Repairs]

216. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

217. Throughout the relevant period, Defendants required Plaintiff CHENG XIA WANG to bear all of the "out-of-pocket" costs associated with his delivery vehicle, including the purchase, maintenance, repair, maintenance of a delivery motor vehicle and/or an electricity bicycle.

218. Based on his personal experience and available information, Plaintiff can

document actual "out-of-pocket" vehicle related expenses of their motor vehicle.

219. The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the motor vehicle in working condition.

220. Plaintiff purchased, maintained and repaired the motor vehicle at his own expense.

221. Plaintiff performed these deliveries for the sole benefit of the Defendants.

222. Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of gasoline and/or the car maintenance.

223. The GSA has published a standard mileage rate used to calculate the costs of operating an automobile for business purposes.

224. In 2013, the GSA standard mileage rate for the use of a car is 53.5 cents per mile for business miles driven.

225. In 2014, the GSA standard mileage rate for the use of a car is 53 cents per mile for business miles driven.

226. In 2015, the GSA standard mileage rate for the use of a car is 54.5 cents per mile for business miles driven.

227. In 2016, the GSA standard mileage rate for the use of a car is 51 cents per mile for business miles driven.

228. As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff would incur the expenses for motor vehicle purchase and maintenance in exchange for compensation from Defendants for such expenses.

229.    Defendants owe Plaintiffs their overdue costs of maintaining motor vehicle for

Defendants' benefit.

### COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Meal Periods
### Brought on behalf of Plaintiff and Potential Rule 23 Class]

230.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

231.    The NYLL requires that employees provide: a noon day meal period of at least

thirty (30) minutes for employees who work a shift of more than six hours extending

over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period

between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift

started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute

meal period at a time midway between the beginning and end of the shift for

employees whose shift lasts more than six hours and starts between 1 p m. and 6

a.m. NYLL§ 162.

232.    Defendants failed to provide meal periods required by NYLL §162 for every day

that Plaintiffs work or worked.

233.    Though the Department of Labor commissioner may permit a shorter time to be

fixed for meal periods than hereinbefore provided, such permit must be in writing

and be kept conspicuously posted in the main entrance of the establishment. No such

permit is posted.

234.    Defendants' failure to provide the meal periods required by NYLL §162 was not

in good faith.

## COUNT IX.
### [Violation of New York Labor Law—Record-Keeping Requirements
### Brought on behalf of Plaintiff and Potential Rule 23 Class]

235.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

236.   Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll records for a period of not less than six years, as required by NYRR § 146-2.1.

237.   As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages including loss of earning, in an amount to be established at trial, liquidated damages, prejudgment interest, costs and attorneys' fee, pursuant to the state law.

238.   Upon information and belief, Defendants failed to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiffs in order to facilitate their exploitation of Plaintiffs' labor.

239.   Defendants' failure to maintain adequate and accurate written records of actual hours worked and true wages earned by Plaintiff were not in good faith.

## COUNT X.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement
### Brought on behalf of Plaintiff and Potential Rule 23 Class]

240.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

241.   The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names

used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

242. Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

243. Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

244. Due to Defendants' violations of New York Labor Law, Plaintiff are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**COUNT XI.**
**[Violation of New York Labor Law—New York Pay Stub Requirement**
**Brought on behalf of Plaintiff and Potential Rule 23 Class]**

245. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

246. The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

247. Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

248. Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).

## COUNT XII.
### [Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434 Brought on behalf of the Plaintiff]

249. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

250. 26 USC §7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

251. Due to Defendants' violations of 26 USC §7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the Plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT XIII.
### [Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349 Brought on behalf of the Plaintiff]

252. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

253.    New York General Business Law §349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

254.    Due to Defendants' violations of New York GBS Law §349, Plaintiff is entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

255.    Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on the behalf of the FLSA Collective Plaintiffs, respectfully requests that this Court enter a judgment providing the following relief:

a)    Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)    Certification of this case as a collective action pursuant to FLSA;

c)    Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)    A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)    An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)    An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due to Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)    An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)    Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)   Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)   An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

k)   An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)   The cost and disbursements of this action;

m)   An award of prejudgment and post-judgment fees;

n)   Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

o)   Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: Flushing, New York
February 3, 2017

TROY LAW, PLLC
*Attorneys for the Plaintiffs, the*
*proposed FLSA Collective, and*
*potential Rule 23 Class*

  /s/ John Troy

John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com