

Littler Mendelson, PC
900 Third Avenue
New York, NY 10022.3298

January 5, 2018

Eli Z. Freedberg
212.583.2685 direct
212.583.9600 main
212.954.5011 fax
efreedberg@littler.com

**VIA ECF**

Honorable Vernon S. Broderick
United States District Judge
United States District Court
Southern District of New York
40 Foley Square, Room 415
New York, New York 10007

**Re:    Cheng Xia Wang et al v. Shun Lee Palace Restaurant Inc. et al, 17-cv-00840 (VSB)(DCF)**

Dear Judge Broderick:

We are counsel for Shun Lee Palace Restaurant, Inc. ("SLPR" or "Shun Lee Palace"), T&W Restaurant, Inc. ("TWRI" or "Shun Lee West"), John Hwang, Michael Tong, Bin Hu and William Hwang (collectively "Defendants"), in the above-referenced action. In accordance with Your Honor's Individual Rules and Practices, we write to request leave to file a motion to strike the opt-in notices of several individuals who purported to join the litigation as Plaintiffs.

The eight Named Plaintiffs, Cheng Xia Wang, Chunlin Zhang, Jun Qing Zhao, Bao Guo Zhang, Ze Jun Zhang, Guoyi Wang, Tong Wei Wu, and Zhi Qiang Lu (hereinafter, "Named Plaintiffs") are current and former food delivery workers who worked at two well-known Chinese restaurants in New York. The Named Plaintiff's Complaint contains allegations that are highly specific to their duties as delivery persons. For example, Count VI, Count VII and dozens of paragraphs within the Complaint allege that Defendants failed to reimburse the Named Plaintiffs for expenses related to the purchase and maintenance of vehicles used to deliver food to Defendants' customers. The Named Plaintiffs' Complaint also contains assertions that recount specific allegations concerning Defendants' alleged scheduling, break, recordkeeping, and pay policies that specifically concern Defendants' delivery staff – and no other types of employees at the restaurants.

Between June 2017 and November 2017, after Named Plaintiffs already filed their complaint, Steven Cheung, Quekyeow Yap, Haiping Wu, Shude Zhang, Keeyew Foo, Tsunming Fong, Terry Wong, Mingsung Chan, Leungtack Choi, Fong Yue, and Guoliang Xu (the "Waiter Opt-ins"), Weijun Zhen ("Bartender"), Billy Qin and Monaliza Wong ("Captains") (collectively, the "Opt-ins") filed consents to join the law suit. As discussed in more detail below, Defendants seek leave to file a motion to strike the purported Opt-ins' consent to join notices and to dismiss them from the lawsuit because there are no allegations that the Opt-ins are similarly situated to

the delivery-person Named Plaintiffs, because the Opt-ins are subject to a collective bargaining agreement ("CBA") that requires arbitration of this dispute, whereas Named Plaintiffs are not parties to the CBA and because Defendants cannot ascertain what the Opt-ins' claims are in this Action.

### I. The Waiter Opt-ins, Bartender, and Captains Should Be Stricken From This Lawsuit Because They Are Not Similarly Situated To The Named Plaintiffs

The purported Opt-ins should be dismissed from the lawsuit because they are not similarly situated to Named Plaintiffs. As a threshold matter, the two disparate groups of employees are subject to a different legal framework because the Wage Order for the Hospitality Industry (the "Wage Order") expressly provides that waiters and bartenders, like the Opt-ins, are "food service workers" while delivery persons, like the Named Plaintiffs, are "service employees." *See* 12 N.Y.C.R.R. §146-3.4. The Wage Order further provides a different set of rules that govern food service workers and service employees. *See e.g.*, 12 N.Y.C.R.R. §146-1.3 (different minimum wage rates and tip credits for food service workers and service employees).

Besides the different regulations that apply to these two distinct categories of employees, the jobs and day to day activities of the purported Opt-ins and Named Plaintiffs are completely different. Specifically, the Named Plaintiffs deliver food outside of the restaurants to customers at home or at work. The purported Opt-ins remain in the restaurant and are responsible for taking orders, ensuring that the kitchen has "plated" orders correctly, "running" and serving food to customers seated at tables, and mixing and serving drinks. Furthermore, the purported Opt-ins and Named Plaintiffs are subject to a different tip pool, are paid at different rates,[1] and have different scheduling requirements. Because the job duties vary significantly, the Named Plaintiffs and the purported Opt-ins they are not similarly situated. *See Romero v. H.B. Auto. Group, Inc.*, 2012 U.S. Dist. LEXIS 61151, at *38-43 (S.D.N.Y. May 1, 2012) (denying motion for conditional certification and noting that "[p]laintiff has made no showing that the work performed by all potential opt-ins is similar to her own"); *Morisky v. Public Serv. Elec. & Gas Co.*, 111 F. Supp.2d 493, 498 (D.N.J. 2000) ("Defendant...has pointed to many specific dissimilarities between the job duties of the named plaintiffs and the opt-in plaintiffs which make certification as a collective action inappropriate"); *Forney v. TTX Co.*, 2006 U.S. Dist. LEXIS 30092, at *7-8 (N.D. Il. Apr. 17, 2006) (plaintiff "fails to identify a single TTX employee who performed duties similar to her"). Without demonstrating any common job duties between these two groups of disparate employees, the opt-in notices should be stricken and the purported Opt-ins' claims should be dismissed.

---

[1] As discussed in Section II below, the purported Opt-ins are subject to a collective bargaining agreement that requires Defendants to pay the Opt-in Plaintiffs at least 40 hours of pay, even if they worked less than 40 hours in a given week. The Named Plaintiffs are not subject to any similar guarantee. Because they are subject to different pay procedures and tip pools, the purported Waiters, Bartender, and Captain Opt-ins should be stricken from the lawsuit. *See e.g. Diaz v. Elecs. Boutique of America, Inc.*, 2005 WL 2654270, at *3 (W.D.N.Y. Oct. 17, 2005) (denying conditional certification and finding employees who were paid hourly and salaried to not be similarly situated).

Honorable Vernon S. Broderick
January 5, 2018
Page 3

## II. The Waiter and Bartender Purported Opt-In's Claims Should Be Dismissed Because Their Employment Is Governed By A Collective Bargaining Agreement

Besides not having similar job duties, the purported Opt-ins' employment relationship with Defendants is governed by a CBA. Specifically, Articles 6 ("Wages") and 7 ("Hours & Overtime") outline the wages Defendants are required to pay the purported Opt-Ins. Article 23 of the CBA governs tipping practices at the restaurants[2] and articles 33 and 34 of the CBA contain explicit grievance and arbitration procedures in the event of a dispute. Specifically, the arbitration clause states: "[a]ny and all disputes between the parties to this agreement, in connection with or arising out of the application or interpretation of this agreement, including grievances that are not resolved under the procedure set forth in the immediately preceding article, shall be submitted to final and binding arbitration...". The delivery-person Named Plaintiffs are not subject to the CBA, another reason why the Named Plaintiffs are dissimilar from the purported Opt-ins and another reason why they should be dismissed from the lawsuit.

Furthermore, the purported Opt-Ins have failed to raise their disputes through the mandatory grievance and arbitration procedures of the CBA. As such, these purported opt-ins should be excluded from the instant matter and required to pursue their claims through the bargained for procedures set forth in the CBA. *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456 (2009) (holding that a CBA that "clearly and unmistakably requires union members to arbitrate... is enforceable").

In sum, Defendants respectfully request leave to file a motion to strike the opt-in notices of several individuals who purported to join the litigation as Plaintiffs. We thank Your Honor for consideration of Defendants' request.

---

[2] Although unclear because the Waiter and Bartender Opt-Ins have not alleged any specific claims against Defendants, any suggestion that they were not provided accurate notice of the tip credit is belied by the CBA - which explicitly grants the Waiter and Bartender Opt-Ins authority to apply a tip credit towards their wages.

Honorable Vernon S. Broderick
January 5, 2018
Page 4


Respectfully submitted,

Littler Mendelson, P.C.

*/s/ Eli Z. Freedberg*

Eli Z. Freedberg


cc:     John Troy, Esq. (via ECF)