UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHENG XIA WANG, CHUNLIN ZHANG, JUN
QING ZHAO, BAO GUO ZHANG, ZE JUN
ZHANG A/K/A ZEJUN ZHANG, GUOYI WANG,
TONG WEI WU, AND ZHI QIANG LU, ON
BEHALF OF THEMSELVES AND OTHERS
SIMILARLY SITUATED,

                Plaintiffs,

          v.

SHUN LEE PALACE RESTAURANT, INC. D/B/A
SHUN LEE PALACE; T&W RESTAURANT, INC.
D/B/A SHUN LEE WEST; JOHN HWANG;
MICHAEL TONG; BIN HU; AND WILLIAM
HWANG

                Defendants.

---

**Index No. 17-cv-00840 (VSB)**

**<u>ORAL ARGUMENT REQUESTED</u>**

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION

A. Michael Weber
Eli Z. Freedberg
Maayan Deker
Kevin K. Yam
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022
Tel: 212.583.9600
*Attorneys for Defendants*

## TABLE OF CONTENTS

**PAGE**

I.  PRELIMINARY STATEMENT ..................................................... 1

II.  RELEVANT FACTS ................................................................. 2

    A.  Procedural history ................................................................. 2

    B.  Relevant facts about the Restaurants and their employees ................... 3

        1.  The Delivery Workers ..................................................... 3

        2.  The East Restaurant Waiters and Bartender ........................ 4

        3.  The West Restaurant Delivery Workers ............................. 4

        4.  Kitchen employees ........................................................ 5

III.  LEGAL ARGUMENT ............................................................. 5

    A.  PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION
        SHOULD BE DENIED ....................................................... 5

        1.  Legal Standard for Facilitation of Notice ........................... 5

        2.  Plaintiffs Are Not Similarly Situated To Their Putative Collective ......... 8

            a.  Putative Collective is not similarly situated because their
                job duties are all different ........................................ 12

            b.  Plaintiffs Failed to Demonstrate That They Or The Putative
                Collective Are Similarly Situated With Respect To An
                Unlawful Policy ................................................... 13

        3.  Waiters and Bartenders at the East Restaurant are Not Similarly
            Situated to Plaintiffs Because They Are Subject to a Collective
            Bargaining Agreement ................................................... 15

            a.  The East Restaurant's Waiters' and Bartender's Claims Are
                Preempted ......................................................... 15

            b.  The East Restaurant's Waiters and Bartender Have Failed
                To Exhaust Their Grievance And Arbitration Remedy
                Procedures ......................................................... 17

TABLE OF CONTENTS
(CONTINUED)

PAGE

4.    There Is No Evidence To Suggest That the Restaurants Engaged in a Common Scheme Or Plan Of Wage and Hour Violations Because They Operated Independently ..................................................... 18

5.    Variations in liability and potential exposure also preclude conditional certification ............................................................................ 20

B.    The proposed notice and distribution plan, if any, must be fair and impartial ............................................................................................................ 21

C.    Equitable Tolling Is Inappropriate ....................................................................... 23

IV.    CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*14 Penn Plaza LLC v. Pyett*,
  129 S. Ct. 1456 (2009)..........................................................................................17

*Adams v. Inter-Con Sec. Sys.*,
  242 F.R.D. 530 (N.D. Ca. 2007)...........................................................................15

*Ahmed v. Giraldo*,
  2015 WL 13227971 (E.D.N.Y. Nov. 13, 2015)......................................................7

*Barfield v. New York City Health & Hosps. Corp.*,
  2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005)...................................................6, 14

*Brickey v. Dolgencorp., Inc.*,
  272 F.R.D. 344 (W.D.N.Y. 2011)..........................................................................14

*Costello v. Kohl's Illinois, Inc.*,
  2014 WL 4377931 (S.D.N.Y. Sep. 4, 2014)..........................................................21

*Diaz v. Elecs. Boutique of Am., Inc.*,
  2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) .......................................................21

*Dreyer v. Altchem Envt'l Servs., Inc.*,
  2007 WL 7186177 (D.N.J. Sept. 25, 2007) .............................................................7

*Ellis v. Harpercollins Publishers, Inc.*,
  2000 WL 802900 (S.D.N.Y. Jun. 21, 2000) ..........................................................16

*Eng-Hatcher v. Sprint-Nextel Corp.*,
  2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009) .......................................................14

*Fu v. Mee May Corp.*,
  2016 WL 1588132 (S.D.N.Y. Apr. 20, 2016)...........................................................6

*Garcia v. Allied Parking Sys.*,
  300 A.D.2d 219 (1st Dep't Dec. 31, 2002)............................................................17

*Garcia v. Spectrum of Creations Inc.*,
  102 F. Supp.3d 541 (S.D.N.Y. May 4, 2015) ........................................................13

*Gillian v. Starjem Rest. Corp.*,
  2011 WL 4639842 (S.D.N.Y. Oct. 4, 2011)...........................................................20

*Guzman v. VLM, Inc.*,
  2007 WL 2994278 (S.D.N.Y. Oct. 5, 2009) ...............................................................22

*Hallissey v. America Online, Inc.*,
  2008 WL 465112 (S.D.N.Y. Feb. 19, 2008) ...............................................................23

*Hintergerger v. Catholic Health Sys*,
  2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ........................................................23, 24

*Hoops v. Keyspan Energy*,
  794 F. Supp. 2d 371 (E.D.N.Y. 2011) .......................................................................16

*Huang v. J & A Entm't Inc.*,
  2010 WL 2670703 (E.D.N.Y. June 29, 2010) ..............................................................8

*J.S. v. Attica Cent. Schs*,
  2006 WL 581187 (W.D.N.Y. Mar. 7, 2006)................................................................23

*Ji v. Jling Inc.*,
  2016 WL 2939154 (E.D.N.Y. May 19, 2016) .............................................................11

*Jimenez v. Lakeside Pic-N-Pac, L.L.C.*,
  2007 WL 4454295 (W.D. Mi. Dec. 14, 2007)..............................................................6

*Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA) Inc.*,
  2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013) ...........................................................18

*Khan v. Airport Mgmt. Servs., LLC*,
  2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011)...............................................................5

*Korenblum v. Citigroup, Inc.*,
  195 F. Supp. 3d 475 (S.D.N.Y. 2016)........................................................................6

*Levinson v. Primedia Inc.*,
  2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003) ............................................................11

*Lingle v. Norge Div. of Magic Chef*,
  486 U.S. 399,413 (1988)........................................................................................16

*Lugo v. Farmer's Pride Inc.*,
  737 F. Supp. 2d 291 (E.D. Pa. 2010) .......................................................................20

*Mata v. Foodbridge LLC*,
  2015 WL 3457293 (S.D.N.Y. June 1, 2015) ..............................................................13

*Morales v. Plantworks, Inc.*,
  2006 WL 278154 (S.D.N.Y. Feb. 1, 2006).................................................................14

*Morisky v. Pub. Serv. Elec. & Gas Co.*,
  111 F. Supp.2d 493 (D.N.J. 2000) ....................................................13

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ...........................................................5, 6

*Primmer v. CBS Studios, Inc.*,
  667 F. Supp. 2d 248 (S.D.N.Y. 2009) .................................................6

*Romero v. H.B. Auto. Grp., Inc.*,
  2012 WL 1514810 (S.D.N.Y. May 1, 2012) .......................................12

*Rudd v. T.L. Cannon Corp.*,
  2011 WL 831446 (N.D.N.Y. Jan. 4, 2011) ............................................5

*Sanchez v. JMP Ventures, L.L.C.*,
  2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) ...........................14, 18, 19

*She Jian Guo v. Tommy's Sushi Inc.*,
  2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014) .......................................11

*Vadino v. A. Valey Engrs.*,
  903 F.2d 253 (3d Cir. 1990) ............................................................17

*Vera v. Saks & Co.*,
  335 F.3d 109 (2d Cir. 2003) ............................................................18

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
  767 F. Supp. 2d 445 (S.D.N.Y. Feb. 8, 2011) ....................................22

*Yap v. Mooncake Foods, Inc.*,
  146 F. Supp. 3d 552 (S.D.N.Y. 2015) ................................................11

**Statutes**

29 U.S.C. § 255(a) .........................................................................22

Fair Labor Standards Act ("FLSA") ...................1, 2, 3, 5, 6, 8, 9, 10, 11, 19, 20, 21, 24

Labor Law § 191(a)(1)(i) ................................................................17

Labor Law § 198 ...........................................................................17

Labor Management Relations Act ...............................................15, 16

National Labor Relations Act ............................................................16

New York Labor Law ("NYLL") ...............................................2, 7, 8, 19

## I.     PRELIMINARY STATEMENT

In this action, eight named Plaintiffs ("Plaintiffs") who worked as delivery persons assert three basic claims: (i) that Defendants failed to pay overtime premiums whenever they worked more than forty hours per week, (ii) that Defendants unlawfully applied a tip credit towards Plaintiffs' wages because Defendants did not comply with various notice requirements, and (iii) Defendants failed to reimburse Plaintiffs for bicycle maintenance expenses.   Plaintiffs now ask this Court to facilitate notice to a putative collective of individuals who not only worked as delivery persons but to all non-exempt or non-managerial employees who worked at two different restaurants.  The facts do not support the granting of Plaintiffs' motion and Defendants submit this memorandum of law in opposition to Plaintiffs' motion to conditionally certify their overbroad collective action.

Plaintiffs approach this motion as if the Court should grant their requested relief without any consideration or deliberation. While the standard for conditional certification is "lenient," it is not non-existent. Plaintiffs must show they are ***similarly situated*** to the collective with respect to a ***common, unlawful practice*** under the FLSA. Plaintiffs have failed to meet this lenient burden because they have failed to present any evidence at all that non-exempt employees such as dishwashers, prep cooks, fry cooks, cashiers, porters, bartenders, busboys, runners, and captains were subject to an unlawful policy to willfully deny them minimum and overtime wages. Indeed, Plaintiffs have neglected to include any discussion of any policy, lawful or not, that applies to these employees. Accordingly, Plaintiffs' proposed collective is overbroad even when applying a lenient standard of review.

While Plaintiffs have submitted several bare and conclusory declarations concerning delivery persons and waiters, even these declarations fail to provide any information or evidence supporting the existence of an unlawful scheme to deprive these individuals of wages.  As a

result, Plaintiffs have failed to meet their burden and the Court should not certify a collective of delivery persons or waiters.

Furthermore, Plaintiffs fail to acknowledge the actual differences within the purported putative collective, including, among other things, that: (1) the two restaurants operate independently, (2) some employees at only one of the restaurants are unionized and the terms and conditions of their employment are governed by a collective bargaining agreement, (3) various pay practices and tip pools govern different employees, and (4) some employees work full-time and others work part-time. These categorical differences demonstrate that the proposed putative class is not similarly situated.

For these reasons, and those set forth below, Plaintiffs' bid for conditional certification should be denied.

## II.     RELEVANT FACTS

### A.     Procedural history

On February 3, 2017, Plaintiffs filed this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action against Defendants. (ECF Dkt. No. 1, Complaint.) The Complaint contains information pertaining to the claims of eight current and former delivery workers at Defendants' two restaurants. (*Id*.) However, Plaintiffs filed this action on behalf of all current and former non-exempt employees (not strictly delivery workers) who were employed by Defendants during the statutory period who allegedly did not receive the full minimum wage and proper overtime compensation, among other allegations. (*Id*. ¶ 171.) After this lawsuit commenced, waiters, captains, and bartenders from the East Restaurant purported to file consent to join claims to join the lawsuit. (*see e.g.* ECF Dkt. Nos. 28-39.) Plaintiffs did not amend their complaint to incorporate any allegations related to these opt-ins. The parties have engaged in discovery, including the service of interrogatories and requests for documents and responded to

said discovery.  The parties have also produced approximately 2,000 pages of documents and had a meet and confer to discuss outstanding discovery.  The parties participated in an unsuccessful Court ordered mediation in November 2017.  In January of 2018, Defendants filed a pre-motion conference letter seeking to exclude the waiters, captain, and bartender opt-ins (ECF Dkt. No. 53), which this Court denied. (ECF Dkt. No. 54.)  On February 8, 2018, Plaintiffs filed this motion, seeking to conditionally certify and facilitate notice to a putative collective of non-exempt individuals who worked at Defendants' two restaurant locations, and who Plaintiffs allege are owed minimum wage and overtime compensation under the FLSA.

**B.     Relevant facts about the Restaurants and their employees**

The two Restaurant Defendants (hereinafter, the "East Restaurant" and the "West Restaurant" and collectively, the "Restaurants") operate independently, service different customers, have different managerial staff, use independent payroll systems, and employ different employees.[1]  (Declaration of Sai Tam, "Tam Decl.", ¶ 8.)   The East Restaurant is a unionized location and its waiters and bartender are subject to a Collective Bargaining Agreement. (Declaration of A. Michael Weber, "Weber Decl.", Ex. A.)  The West Restaurant is not a unionized facility.  (Declaration of John Ma "Ma Decl.", ¶ 6.)

**1.     The Delivery Workers**

The delivery workers at each of the Restaurants are paid pursuant to a tipped minimum wage. (Declaration of Zhiyong Lou ("Lou Decl."), ¶ 19; Declaration of Guisheng Shi ("Shi Decl."), ¶ 14.)   The delivery workers at each of the Restaurants are subject to their own tip pool

---

[1] In addition to naming the two Restaurants, Plaintiffs have also named John Hwang, Michael Tong, Bin Hu and William Hwang as individual defendants.  Plaintiffs have not presented any legal or factual basis to hold the individual defendants jointly liable with the Restaurants for any alleged common policy or plan that violated the FLSA.  Other than the conclusory allegations asserted in the Complaint (ECF Dkt. No. 1, ¶¶ 22-30) Plaintiffs have presented no evidence whatsoever in support of joint liability.  They fail to even mention any of the individual defendants in their declarations.  (ECF Dkt. Nos. 59-5–59-8.)  However, to the extent that the Court does conditionally certify the collective, Defendants reserve their rights to raise this issue regarding joint liability again on any future motions, including, but not limited to, motions for decertification or summary judgment.

that consists of only other delivery workers working that same shift at the same Restaurant. (Lou Decl., ¶ 18; Shi Decl., ¶ 12.)  The delivery workers have varying schedules as some work full-time while others work part-time.  (Lou Decl., ¶ 8; Shi Decl., ¶ 5.)

### 2. The East Restaurant Waiters and Bartender

The East Restaurant is a unionized location.  (Tam Decl., ¶ 27.) The terms and conditions of employment for the East Restaurant waiters and bartender including compensation and grievance and arbitration procedures, are governed by a Collective Bargaining Agreement ("CBA").  (Weber Decl., Ex. A). The CBA governs virtually all of the terms and conditions of their employment such as wages owed, minimum hours of work per week that are required, minimum compensation required per week, overtime rates, maximum days of work per week, split shift pay required, notice of schedule changes required, prohibition against the deduction of wages, required meal breaks, and tip pooling prerequisites. *Id.*

The West Restaurant is not a unionized facility. (Ma Decl., ¶ 6.)  The Waiters at the West Restaurant have their own tip pool arrangement and are paid pursuant to a tip credit.[2] (Ma Decl., ¶¶ 12-16.)

### 3. The West Restaurant Delivery Workers

Unlike the East Restaurant delivery workers, Plaintiffs do not even allege that the West Restaurant delivery workers worked overtime.  Specifically, both Plaintiffs Lu and Wu who submitted affidavits in support of Plaintiff's motion acknowledge that they worked less than 40 hours per week and do not even assert overtime claims during the periods that they were employed at the West Restaurant. (Compl., ¶¶ 139, 156, Wu Decl., ¶ 5, Lu Decl., ¶ 4.)

---

[2] The waiters at the West Restaurant have smaller tip pools within the larger group of waiters.  Specifically, depending on the shift, the West Restaurant waiters are usually grouped for service to customers in groups of three waiters (such that in the early shift there are usually two groups of three waiters, in the middle shift there is one group of three waiters, and in the late shift there are normally two groups of three waiters).  (Ma Decl., ¶¶ 13-16.) The waiters in each group pool the tips they earn and split tips within the group. (*Id.*, ¶ 12.)

### 4.   Kitchen employees

Plaintiffs have presented no evidence, or even allegations, about the nature of the kitchen employees' claims.  The back of the house staff at each of the Restaurants are paid at least the full-minimum wage, do not receive tips (with the exception of packers who are tipped separately in addition to receiving the minimum wage), do not have tip credits applied to their wages, and do not participate in any delivery or waiter tip pools.  (Tam Decl., ¶ 26; Ma Decl. ¶ 7.)

## III.   LEGAL ARGUMENT

### A.   PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION SHOULD BE DENIED

#### 1.   Legal Standard for Facilitation of Notice

There is nothing within the text of the FLSA that authorizes a Court to facilitate notice of an FLSA lawsuit to individuals who are similarly situated to the named Plaintiffs; nevertheless the Second Circuit has held that district courts '"have discretion, in appropriate cases, to implement [§216(b)] ... by facilitating notice to potential plaintiffs" of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."' *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). "In determining whether to facilitate such a notice, courts have coalesced around a two-step method which, while again not required by the terms of FLSA or the Supreme Court's cases," involves the court making an "initial determination to send notice to potential opt-in plaintiffs who may be "similarly situated" to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id*.  "While plaintiff's burden at this [initial] stage is modest, it is not non-existent," and it "cannot be satisfied simply by 'unsupported assertions.'" *Khan v. Airport Mgmt. Servs., LLC*, 2011 WL 5597371, at *3 (S.D.N.Y. Nov. 16, 2011);  *see also Rudd v. T.L. Cannon Corp.*, 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011) ("Although the standard governing plaintiffs' application is lax and their burden modest, a court must nonetheless take a

measured approach when addressing a request for collective action certification, mindful of the potential burdens associated with defending against an FLSA claim involving a large and broadly defined collective group of plaintiffs.").

Conclusory allegations and unsupported assertions are insufficient.  *Myers*, 624 F.3d at 555; *see also Fu v. Mee May Corp.*, 2016 WL 1588132, at *2 (S.D.N.Y. Apr. 20, 2016) ("'[C]ertification is not automatic.' This modest showing must 'still be based on some substance,'' and "[a] plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice.").

Where, as here, a conditional certification motion is made after some, but not all, discovery has occurred, application of an "intermediate scrutiny" test is warranted.  *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480–81 (S.D.N.Y. 2016).  In applying this "modest-plus" standard, a court will "look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding 'that the body of evidence is necessarily incomplete." *Id. See also Jimenez v. Lakeside Pic-N-Pac, L.L.C.*, 2007 WL 4454295, at *2 (W.D. Mi. Dec. 14, 2007) ("where the parties have had an opportunity to conduct pre-certification discovery, courts tend to hold plaintiffs to a higher standard of proof").

In order to satisfy their burdens under either the lenient or modest plus standards, Plaintiffs are required to submit something more than hearsay or inadmissible declarations. *See e.g., Barfield v. New York City Health & Hosps. Corp.*, 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005) (holding that anecdotal hearsay is ***insufficient*** to establish the existence of a widespread practice); *see also Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 254 (S.D.N.Y. 2009) (quoting *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999) ("[a] court may . . . strike portions of an affidavit that are not based on the affiant's personal knowledge, contain

inadmissible hearsay or make generalized and conclusory statements"); *Dreyer v. Altchem Envt'l Servs., Inc.*, 2007 WL 7186177, at *4 (D.N.J. Sept. 25, 2007) (determining that plaintiffs "unsubstantiated assertions" and vague affidavits were not enough for plaintiffs to make the "requisite factual showing").

As the parties have engaged in substantial discovery concerning the named Plaintiffs, the Court should apply this modest plus standard in evaluating Plaintiffs' motion.  This Court should further disregard the declarations submitted in support of conditional certification, because they contain knowingly false statements.  For example, Plaintiff Wang asserts that Defendants failed to provide him with "a written notice, in English and in Chinese, of my rate of pay, employer's regular pay day, and such other information as required by the NYLL." (ECF Dkt. No. 59-5, Wang Decl., ¶ 20.)  Contrary to Plaintiff Wang's patently false assertion, Defendants provided him with his notice of pay rate while he was employed and further produced evidence to Plaintiff Wang's counsel during discovery. (*See e.g.* Weber Decl., Ex. B.)  Mr. Wang with the aid of his attorney nevertheless proceeded to make knowingly false statements with this testimony.  The egregious lies contained in Plaintiffs' declarations should not be considered by this Court.  *See Ahmed v. Giraldo*, 2015 WL 13227971, at *4 (E.D.N.Y. Nov. 13, 2015) (noting that the Court was "perturbed by [defendant's] patent misrepresentation in an affidavit filed with the Court...").  In any event, as discussed in more detail below, regardless of the standard applied by the Court, Plaintiffs have failed to meet their burden.

In addition, the Court should not accord any deference to the inadmissible declarations of Plaintiffs Wang and Wu because they were not filed with accompanying certified translations.[3] Courts in this Circuit have determined that certain declarations are inadmissible where they are

---

[3] It is not clear whether the declarants Yap and Lu, speak or understand English.  As such, we do not know whether Plaintiffs understood and/or authorized the contents of the statements that they set forth in their declarations.

filed by witnesses who do not speak or understand English without simultaneously providing certified translations. *Huang v. J & A Entm't Inc.*, 2010 WL 2670703, at *1 (E.D.N.Y. June 29, 2010) (denying conditional certification until plaintiff "filed with the court a declaration in Chinese together with an English translation certified under oath to be accurate").

### 2.  Plaintiffs Are Not Similarly Situated To Their Putative Collective

Plaintiffs have failed to meet both the lenient standard, or the more stringent modest-plus standard necessary for collective action verification because they have presented no admissible evidence whatsoever concerning their alleged similarity to the overwhelming majority of the putative collective they want to send notice to.

The Plaintiffs are eight current and former delivery workers who alleged FLSA and NYLL violations against Defendants. All of the Complaint's allegations were limited to claims concerning delivery workers only. For example, the Complaint alleges that Defendants violated the law with respect to: (i) the allocation of break and meal periods to delivery workers, (ii) time keeping policies for delivery persons, (iii) rates of pay particular to delivery persons, (iv) reimbursement of bicycle and electric delivery vehicle repair costs. (*see e.g.* Compl. ¶¶ 1-2, 49, 66-67, 74, 106.) There are simply no allegations in the Complaint that concern any other type of employees besides delivery workers.

Moreover, in support of their motion, Plaintiffs submitted three declarations from delivery persons and one declaration from a waiter. In fact, the only allegations that Plaintiffs proffer in support of their motion are:

<u>**Cheng Xia Wang**</u>

- "I know it is Defendants' policy not to pay employees minimum wage or overtime because I have talked with other deliverymen, who worked there between the time period of 2008 and 2014 and received similar wage as me. All deliverymen had the same or similar working schedules. I know this because I personal[ly] observed the hours that they worked each day." (ECF Dkt. No. 59-5, Wang Decl.¶ 21.)

- "Defendants told us that all deliverymen were paid at the same rate." (*Id*.¶ 22.)

- "I usually chat with other deliverym[e]n [sic] about the wage situation each time we received the paycheck.  Sometimes, we got together to discuss why the wage for a certain week was so low considering the long hours that we actually worked." (*Id*. ¶ 23.)

Plaintiff Wang was only employed at the East Restaurant.  Plaintiff Wang describes alleged conversations he claims he had with other deliverymen who worked at his restaurant but does not elaborate their specific hours worked or pay received.  He does not identify when these alleged conversations took place, making it difficult to determine whether they are within the FLSA statute of limitations period.  Moreover, Plaintiff Wang fails to describe that he was similarly situated to any other category of employees other than delivery workers.

### Zhiqiang Lu

- "I know that it is Defendants' policy to not pay deliverym[e]n the difference between the full minimum wage and the deliverym[e]n subminimum wage for all hours worked toward forty (40) hours a week, nor the overtime at one and a half times of the full minimum wage for all hours worked over forty (40) hours a week." (ECF Dkt. No. 59-7, Lu Decl. ¶ 8.)

- "I know this because I have talked with other deliverymen at Shun Lee about the rate of pay who have similar working schedule as mine, when we were doing side jobs." (*Id*., ¶ 9.)

Plaintiff Lu describes other deliverymen who he worked with but does not elaborate their specific hours worked or pay received.  He also does not state whether he is describing his experience at the East or West Restaurant locations because he alleges to have worked at both. (*Id*., ¶¶ 2-3.)   Plaintiff Lu also does not allege to have worked overtime at the West Restaurant nor does he describe with any specificity about when these alleged conversations with other deliverymen took place, making it difficult to determine whether they took place within the FLSA statute of limitations period.  Further, Plaintiff Lu fails to describe that he was similarly situated to any other category of employees other than delivery workers.

9

## Tongwei Wu

- "I know that it is Defendants' policy to not pay employees minimum wage or overtime because I have talked with other deliverymen at Shun Lee West about the general wage situation, who all had same or similar working schedule as me." (ECF Dkt. No. 59-6, Wu Decl. ¶ 12.)

Plaintiff Wu was only employed at the West Restaurant. Plaintiff Wu describes conversations with other deliverymen who he worked with but does not elaborate their specific hours worked or pay received. He does not describe with any specificity about when these alleged conversations took place, making it difficult to determine whether they are within the FLSA statute of limitations period. Moreover, Plaintiff Wu does not even state overtime claims. (*Id.*, ¶ 5.) Finally, Plaintiff Wu fails to describe that he was similarly situated to any other category of employees other than delivery workers.

## Quek Yeow Yap

- "I know that it is Defendants' policy to not pay waiters/waitresses the difference between the full minimum wage and the subminimum wage for all hours they worked toward forty (40) hours a week, nor to pay overtime at one and a half of the full minimum wage for all hours they worked over forty (40) hours a week." (ECF Dkt. No. 59-8, Yap Decl. ¶ 20.)

- "I know this because Defendants told us that all waiters were paid at the same rate, the subminimum wage for waiters for the relevant period." (*Id.* ¶ 21.)

- "I have personally observed all other waiters/waitresses having the same working hours as me, including the time and length of doing side jobs." (*Id.* ¶ 22.)

- "When waiters/waitresses complained that they cannot earn any tips when doing the side jobs, I joined their conversation and learned that we were all paid the waiters' subminimum wage as base pay." (*Id.* ¶ 23.)

Opt-in Yap was only employed at the East Restaurant. Opt-in Yap describes conversations with other waiters who he worked with but does not elaborate their specific hours worked or pay received. Opt-in Yap does not describe with any specificity about when these alleged conversations took place, making it difficult to determine whether they are within the

FLSA statute of limitations period.  He also does not describe that he was similarly situated to any other category of employees other than waiters at the East Restaurant.

None of these declarations contain any information or allegations about the pay structure, workplace policies, or claims alleged by any type of employee other than a waiter or delivery person even though Plaintiffs seek certification of a collective consisting of all non-managerial employees who worked at Defendants' Restaurants. (ECF Dkt. No. 58-1.) Nevertheless, Plaintiffs seek a collective consisting of all non-exempt employees. (*Id*.) This failure to include any information about the majority of the putative collective mandates a finding that the putative collective is overbroad as a matter of law. *See e.g., Levinson v. Primedia Inc.*, 2003 WL 22533428, at *1-2 (S.D.N.Y. Nov. 6, 2003) (denying plaintiff's request for notice to potential class members where plaintiff failed to support their allegations of a company-wide policy with a factual showing that extended beyond their own circumstances); *She Jian Guo v. Tommy's Sushi Inc.*, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014) (Plaintiffs' complaint and affidavits do not contain a single factual allegation specific to other types of employees besides delivery people and chefs, such as "the specific hours worked by, or the amounts paid to, other employees."); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 564–65 (S.D.N.Y. 2015) ("Plaintiffs contend only that their allegations about deliverymen and chefs allow the Court to draw an 'inference' that Defendants 'failed to pay other employees such as wait staff, bussers, etc., their entitled overtime'" [b]ut "Plaintiffs do not cite a single case permitting such an inference absent a modest but job-specific factual showing, which is what courts in this district usually require."); *Ji v. Jling Inc.*, 2016 WL 2939154, at *4-5 (E.D.N.Y. May 19, 2016) (denying conditional certification when the plaintiff "claims in conclusory fashion that [the defendants] had a 'common policy' of failing to pay overtime pay to non-managerial Showa Hibachi

employees" and "fails to provide any details regarding the observations and conversations that form the basis of his conclusion").

Indeed, Plaintiffs cannot seriously contend that they have met the limited burden to show that the expansive putative collective (which includes chefs, cooks, fry woks, other kitchen workers, sorters, packers, vegetable/meat cutters, bartenders, waiters/waitresses, dishwashers, busboys, and deliverymen) is similarly situated to the named Plaintiffs when they have failed to provide a single detail about the employment practices that concern the bulk of this putative collective. Accordingly, Plaintiffs have failed to satisfy the standard, lenient as it may be, to demonstrate that they are similarly situated to any type of employee besides waiters and delivery persons and thus, the Court should deny Plaintiffs' motion.

> **a.    Putative Collective is not similarly situated because their job duties are all different**

Because the job duties, scheduled hours, pay rates, and supervisors vary significantly, the Named Plaintiffs and the Opt-ins are not similarly situated. Plaintiffs deliver food outside of the restaurants to customers at home or at work. (Lou Decl. ¶5.) The waiters remain in the restaurant and are responsible for taking orders, ensuring that the kitchen has "plated" orders correctly, "running" and serving food to customers seated at tables, and mixing and serving drinks. Plaintiffs fail to address how the job duties of other types of employees other than delivery workers at the Restaurants and one waiter at the West Restaurant are similarly situated to other categories of employees at either of the Restaurants. (*See* ECF Dkt Nos. 59-5, 59-6, 59-7, 59-8; Wang, Wu, Lu, and Yap Decls.)

When job duties differ across a putative collective a court shall not certify the collective. *See Romero v. H.B. Auto. Grp., Inc.*, 2012 WL 1514810, at *14 (S.D.N.Y. May 1, 2012) (denying motion for conditional certification and noting that "[p]laintiff has made no showing

that the work performed by *all* potential opt-ins is similar to her own"); *Mata v. Foodbridge LLC*, 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) (denying the plaintiff's motion for conditional certification when the plaintiff "includes no concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions" even though his declaration lists "the names and titles of seventeen coworkers-including food preparers, pizza men, counter persons, a cook, a grill man, a juice preparer, a porter, a delivery person, a dishwasher, and a panini preparer"); *Garcia v. Spectrum of Creations Inc.*, 102 F. Supp.3d 541, 549–50, (S.D.N.Y. May 4, 2015) (limiting certification to only those individuals who performed plaintiffs' specific job positions, because plaintiffs' affirmations "provide[d] no information...about individuals who performed other job functions at defendants' business"); *Guo*, 2014 WL 5314822, at *3–4 (S.D.N.Y. Oct. 16, 2014) (certifying collective of deliverymen only, because plaintiff provided only "vague, conclusory, and unsupported assertions" about other types of employees); *Morisky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp.2d 493, 498 (D.N.J. 2000) ("…plaintiff[] does not even discuss the job responsibilities of the opt-in plaintiffs. Instead, plaintiffs reference an extremely broad 'general connection' all plaintiffs have to the production of electricity.   Defendant…has pointed to many specific dissimilarities between the job duties of the named plaintiffs and the opt-in plaintiffs which make certification as a collective action inappropriate").   Accordingly, here, especially with the absence of any proof provided by Plaintiffs, the collective should not include the employees with disparate responsibilities.

> **b.     Plaintiffs Failed to Demonstrate That They Or The Putative Collective Are Similarly Situated With Respect To An Unlawful Policy**

Not only must Plaintiffs establish that they and the putative class are similarly situated, they must also put forth evidence "sufficient to demonstrate that [they] and potential collective

members were victims of a common scheme or plan *that violated the law*." *Morales v. Plantworks, Inc.*, 2006 WL 278154, at \*2 (S.D.N.Y. Feb. 1, 2006) (emphasis added); *Barfield*, 2005 WL 3098730, at \*1 (denying conditional certification where the plaintiff presented nothing but anecdotal hearsay to suggest that the defendants had a widespread unlawful practice). In *Sanchez v. JMP Ventures, L.L.C.*, the court denied the plaintiff's motion for conditional certification because the record proffered by the plaintiff was insufficient to support "even an inference that a common policy or plan that violated the law existed with respect to this variety of potential opt-in plaintiffs." 2014 WL 465542, at \*4 (S.D.N.Y. Jan. 27, 2014).  Likewise here, Plaintiffs fail to even allege that Defendants had any illegal common policy or practice that affected all of the individuals employed by Defendants whom Plaintiffs seek to encompass in their motion. *See also Eng-Hatcher v. Sprint-Nextel Corp.*, 2009 WL 7311383, at \*3 (S.D.N.Y. Nov. 13, 2009) (determining that plaintiff's general statements in her deposition were insufficient to show that there were illegal practices that applied to others); *Brickey v. Dolgencorp., Inc.,*, 272 F.R.D. 344, 348 (W.D.N.Y. 2011) (denying conditional certification where the plaintiffs could not show that violations of a lawful company policy were widespread or common practice).

Plaintiffs have not demonstrated that they and the putative collective were subject to a common illegal policy. The closest Plaintiffs came with respect to making this showing is a vague statement that they "know" of other employees who were not paid minimum wage and overtime wages. (*see e.g.* Compl., ¶¶ 1, 182, 194; *see also* Wang Decl., ¶ 21 "I know that it is Defendants' policy to not pay employees minimum wage…").   Plaintiffs however, failed to provide any specificity as to the wages, hours, and policies that applied to the other employees who worked for Defendants and thus, they have failed to demonstrate even an inference of a

14

common illegal policy purportedly affecting all of those other workers. As a result, the Court should deny Plaintiffs' motion.

> **3.      Waiters and Bartenders at the East Restaurant are Not Similarly Situated to Plaintiffs Because They Are Subject to a Collective Bargaining Agreement.**

The waiters and bartenders at the East Restaurant are not similarly situated to anyone else in the putative collective because they are members of a union and are subject to a CBA.  The CBA which outlines their compensation terms and which differs completely in the manner that other non-exempt employees at the East and West Restaurants are paid. (Weber Decl., Ex., A.) In accordance with the CBA, the waiters are guaranteed 40 hours of pay every week regardless of whether they even worked 40 hours, while the waiters at the West Restaurant are not. *See* Weber Decl., Ex. A; Tam Decl. ¶ 25; Ma Decl. ¶ 6. The CBA also governs the tip pooling arrangement, meal breaks, scheduling policies, overtime rates, leave policies, and types of work that the East Restaurant waiters are subject to.  *See* Weber Decl. Ex. A; Tam Decl. ¶ 25. Other than the East Restaurant Bartenders, no other class of employee within the putative collective is a member of the union.  Because the CBA provides that the East Restaurant waiters and bartenders are subject to an entirely different set of workplace policies and procedures than the remaining members of the putative collective, they are not similarly situated to the Named Plaintiffs and must be excluded from any putative collective.  *Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 539 (N.D. Ca. 2007) ("The court finds that the exclusion of officers subject to CBAs from the collective class is justified, so notice will not be provided to such officers at this time.").

> **a.      The East Restaurant's Waiters' and Bartenders' Claims Are Preempted**

The East Restaurants' waiters' and bartenders' claims are also preempted by the Labor Management Relations Act ("LMRA"), because they are explicitly based upon rights set forth in

the CBA. Claims based "squarely on the terms of the collective bargaining agreement" are "preempted by the Labor Management Relations Act and the National Labor Relations Act." *Ellis v. Harpercollins Publishers, Inc.*, 2000 WL 802900, at *2 (S.D.N.Y. Jun. 21, 2000) (dismissing the complaint and stating "[b]ecause the reported violation is based on a failure to pay union employees in accordance with the terms of a CBA, however, this violation is preempted by Section 301 of the Labor Management Relations Act ("LMRA")"); *Hoops v. Keyspan Energy*, 794 F. Supp. 2d 371, 379 (E.D.N.Y. 2011) ("Where, as here, 'the alleged violations hinges on the collective bargaining agreements' definition of the terms of employment, they must be brought under the LMRA and in accordance with the agreement's grievance and arbitration provisions…[b]ecause the instant case would require the Court to interpret the CBA to determine whether it embodied an agreement between the parties to pay the Plaintiff contractual shift differentials for certain shifts and work, the [p]laintiff's claim is preempted by the LMRA.").

The CBA at issue here specifically addresses tip pooling, the guarantee of a full-week's work, and overtime -- the exact claims that the East Restaurant Waiters and Bartender are theoretically asserting. (Weber Decl., Ex. A., Articles, 6-7, 23.)  Because Plaintiffs' claims based on unpaid minimum wage and overtime (which are discussed in the CBA) are based "squarely on the terms of the collective bargaining agreement" those claims are preempted.  This distinction in the putative collective further renders conditional certification of a class to include the East Restaurant waiters and bartender inappropriate.

Further, the East Restaurant unionized employees' state law claims for unpaid minimum wage and overtime are also preempted.  *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399,413 (1988) ("[W]e hold that an application of state law is preempted by § 301 of the [LMRA] only if

such application requires the interpretation of a collective bargaining agreement."); *Garcia v. Allied Parking Sys.*, 300 A.D.2d 219 (1st Dep't Dec. 31, 2002) ("Plaintiff's claims for attorneys' fees under Labor Law § 198, based on defendants' purported violations of Labor Law § 191(a)(1)(i) in failing to pay him overtime at the rate provided in his Collective Bargaining Agreement, were properly dismissed.  Such claims necessarily require interpretation of the [CBA], since defendants are disputing the applicability of the wage schedule invoked by plaintiff, and are therefore preempted by [the LMRA].")

> **b.  The East Restaurant's Waiters and Bartenders Have Failed To Exhaust Their Grievance And Arbitration Remedy Procedures**

The East Restaurant waiters and bartenders failed to raise their disputes through the mandatory grievance and arbitration procedures of the CBA.  As such, these purported opt-ins should be excluded from the instant matter and required to pursue their claims through the bargained for procedures set forth in the CBA. *14 Penn Plaza LLC v. Pyett*, 129 S. Ct. 1456, 1458 (2009) (holding that a CBA that "clearly and unmistakably requires union members to arbitrate… is enforceable").

Pursuant to the terms of the CBA, the East Restaurant waiters and bartender are required to follow an established grievance procedure for "any grievance arising out of the interpretation or application of any provisions of [the] agreement."  (Weber Decl., Ex. A, Art. 33.)  To the extent that any disputes (including unresolved grievances) arise, the CBA also contains an explicit arbitration provision. (Weber Decl., Ex. A, Art. 34.)  The union grievance process as well as the detailed arbitration provisions set out in the CBA provide effective, bargained-for mechanisms to address wage and hour issues that may arise and the East Restaurant employees subject to the CBA should be held to those procedures. *Vadino v. A. Valey Engrs.*, 903 F.2d 253, 266 (3d Cir. 1990) ("we believe that claims which rest on interpretations of the underlying

collective bargaining agreement must be resolved pursuant to the procedures contemplated under the LMRA, specifically grievance, arbitration, and, when permissible, suit in federal court under section 301"); *Vera v. Saks & Co.*, 335 F.3d 109, 118-19 (2d Cir. 2003) ("Ordinarily…, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement.  Because plaintiff failed to exhaust his remedies under the CBA to grieve and arbitration his section 193 claim, the District Court properly granted defendant summary judgment.") (citation omitted). Since the East Restaurant employees subject to the CBA have not exhausted their grievance process and since they are compelled to arbitrate their disputes, they should not be permitted to join the putative collective.

4. **There Is No Evidence To Suggest That the Restaurants Engaged in a Common Scheme Or Plan Of Wage and Hour Violations Because They Operated Independently**

Plaintiffs bear the burden of establishing that Defendants' two separate and independently-run restaurants are engaged in a common scheme or plan of wage and hour violations. They have failed to demonstrate that the West Restaurant employees are similarly situated to the East Restaurant employees and/or that they are subject to common policies or plans.  Accordingly notice should not be disseminated to employees at the West Restaurant.  *See Sanchez v. JMP Ventures, L.L.C.*, 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) ("Conditional certification of the class proposed by plaintiffs—a class of all tipped employees, at three restaurants, over a three-year period - is not supported by plaintiff's declaration as submitted."); *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA) Inc.*, 2013 WL 5132023, at *5 (E.D.N.Y. Sept. 12, 2013) (denying conditional certification because the plaintiff failed to show the she and "fellow clerks at the three [] locations were victims of a common policy or plan that violated the law"  because the "plaintiff has made 'no effort to detail the precise mechanisms by which she observed any other clerk being injured'").

Here, the Restaurants were independently managed by different managers at each location, used different payroll systems, utilized different accounts payable personnel, employed different pay practices and policies, and had kitchens that were completely separate and independent of each other. *See* Tam Decl. ¶¶ 21-22; 26; Ma Decl. ¶ 7.   This fact cannot be seriously disputed as there is not even *one* assertion from Plaintiffs in the four declarations in support of the instant motion, where Plaintiffs claim that the Restaurants are entities that operate as a joint employer or that they operate under a common scheme or plan that violate the FLSA and the NYLL. *See Sanchez*, 2014 WL 465542, at *2 (denying conditional certification to encompass three separate restaurant locations when the plaintiff did not "provide any detail as to a single such observation or conversation" that "policies to which he was subjected" to during his employment by the defendants "were the 'common practice' at all Harry's Italian Restaurants").

Even employees in the same work department (i.e. waiters) are subject to different pay structures and conditions depending whether they are employed at the East or West Restaurants. *See* Tam Decl. ¶ 27; Ma Decl. ¶ 12.   For example, waiters at the West Restaurant have several tip pools that may consist of three waiters in each pool during any particular shift, while waiters at the East Restaurant have one tip pool that consists of all waiters in any particular shift. Tam Decl. ¶ 26; Ma Decl. ¶¶ 12-16.   These workers are separately scheduled depending on the location of their work and the identity of their managers.   Weber Decl., Ex. A; Tam Decl. ¶ 9; Ma Decl. ¶¶ 8, 10.

Based on the foregoing, Plaintiffs have failed to meet either the lenient or modest-plus standard necessary to show that workers at the Restaurants are similarly situated to each other.

19

Accordingly, the Court should decline to certify a collective that includes both the East and any West Restaurant employees.

### 5. Variations in liability and potential exposure also preclude conditional certification

Even if Plaintiffs could articulate a common method by which to prove their claims, that would not end the analysis. Individual questions would still remain regarding whether *liability* exists as to each individual employee. *See Lugo v. Farmer's Pride Inc.*, 737 F. Supp. 2d 291, 303 (E.D. Pa. 2010) (decertifying collective due to the fact that certain collective members were not undercompensated). In order to seek recovery, each member of the putative collective would have to first prove that he or she was denied minimum wage or overtime payments. Plaintiffs cannot do this without resorting to individualized inquiries because variance in potential liability exists specifically within the putative collective (and even more telling among the *named Plaintiffs*) (*compare* ECF Dkt. No., 59-5, Wang Decl. ¶¶ 7, 8, 12, alleging that he worked either 68.5, 66 or 62.5 hours each week with ECF Dkt. No. 59-6, Wu Decl. ¶ 5, alleging that he worked 36.5 hours per week.) Thus, some Plaintiffs have not even suffered a single overtime violation. Moreover, other putative collective members were paid the full minimum wage and therefore cannot assert any "tip credit claims". (Ma Decl., ¶7.) As discussed earlier, many members of the putative collective, including the Plaintiffs themselves, received tip credit notices; therefore the Court will have to conduct a highly individualized inquiry into the improper notice claim. Determining whether any member of the putative collective is entitled to damages will require individualized inquiries into each non-exempt employees daily time, shift, and payroll records. Under these circumstances, collective treatment is inappropriate. *See Gillian v. Starjem Rest. Corp.*, 2011 WL 4639842, at *6 (S.D.N.Y. Oct. 4, 2011) (whether the defendant's "alleged rules violated the minimum wage and overtime provisions of the FLSA depends on the number of

hours each individual worked on a particular shift, as well as the number of hours each individual worked in a particular week"); *Diaz v. Elecs. Boutique of Am., Inc.*, 2005 WL 2654270, at *6 (W.D.N.Y. Oct. 17, 2005) (denying certification where, among other things, plaintiff's claims required factual analysis of workers' daily activities and responsibilities, and examination of when plaintiff and each class member was to work, when they actually worked).

**B.     The proposed notice and distribution plan, if any, must be fair and impartial**

Plaintiffs' proposed notice and distribution plan is flawed.   While Defendants have included some of their objections below, if the Court orders notice to issue, Defendants request that the Court require the parties to confer in an attempt to agree upon the content, form and distribution of the notice, and, if the parties are unable to reach agreement, brief any outstanding issues for resolution by the Court.  *See Costello v. Kohl's Illinois, Inc.*, 2014 WL 4377931, at *8 (S.D.N.Y. Sep. 4, 2014) ("The Court directs the parties to confer on both the form and dissemination of the notice … [and] to the extent the parties are unable to reach an agreement, identif[y] such disputes.").

First, Plaintiffs' proposed notice period is overbroad as it seeks a three year notice period. (ECF Dkt. No. 59-2.).  A two year statute of limitations period is applicable here and the notice form should reflect that two year period.[4]

---

[4] The statute of limitations period under the FLSA is two years, unless willfulness is demonstrated.  29 U.S.C. § 255(a).  Here, Plaintiffs' request that the notice period in the instant matter be subject to a three year statute of limitations period (ECF Dkt. No. 58-1; Pl. Mot. p. 8) should be rejected because they have not met their burden to show that Defendants acted willfully.  In fact, Plaintiffs have presented no evidence to even suggest that Defendants willfully violated the FLSA.  Their references to willfulness are limited to conclusory allegations contained in the Complaint (*see e.g.* ECF Dkt. No. 1, ¶ 45, 62, 116, 184, 197) and memorandum of law (*see e.g.* ECF Dkt. No. 58-1, p. 5, 6).  Extending the statute of limitations here, where one of the Defendants works jointly with a union to ensure wage and hour compliance, and where there has been no concrete allegation of bad faith or recklessness would unduly prejudice Defendants. Accordingly, should the Court grant any part of Plaintiffs' motion, notice should  only be disseminated to employees who worked two years prior to this Court's decision.  Additionally, Named Plaintiffs Cheng Xia Wang, Chun Lin Zhang, Tong Wei Wu, Bao Guo Zhang, and Guoyi Zhang (whose employment ended in May 2014, June 2013, July 2012, and February 2011 respectively), are barred by the limitations period.  Even if the Court applies a three-year limitations period, named Plaintiffs Chun Lin Zhang, Bao Guo Zhang, and Guoyi Zhang's FLSA claims are time-barred.

Second, the notice period should extend back from the date on which notice is mailed, not the date on which the case was initiated as Plaintiffs seek to do here.  29 U.S.C. § 255(a); 256(b); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. Feb. 8, 2011) ("Because the statute of limitations runs for each individual plaintiff until he consents to join the action, courts generally permit plaintiffs to send notice to those employed during the three year period prior to the date of the Order or to the mailing of the notice.")

Third, Plaintiffs seek to conditionally certify a collective of "all current and former non-exempt, non-managerial current employees, including but not limited to: chefs, cooks, fry woks, other kitchen workers, sorters, packers, vegetable/meat cutters, bartenders, waiters/waitresses, dishwashers, busboys, and deliverymen" (ECF Dkt. No. 59-2), yet, as discussed herein, Plaintiffs have not presented any evidence whatsoever regarding any employees other than one waiter and various delivery workers.  Plaintiffs have not made any effort to explain what these other employees claims might be and their request is simply overbroad, and the recipients of any notice should be appropriately limited.

Fourth, Plaintiffs' proposed notice and consent to join form repeatedly provides Plaintiffs' counsel's contact information and fails to mention Defendants' counsel's contact information.  (ECF Dkt. No. 59-2, pp. 4, 5, Dkt. No. 59-3, p. 1.)  If the Court is inclined to issue notice, the putative collective should also be provided with Defense counsel's information. *See, e.g.*, *Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d at 451 (requiring inclusion of contact information for defendants' counsel); *Guzman v. VLM, Inc.*, 2007 WL 2994278, at *8 (S.D.N.Y. Oct. 5, 2009) ("it would be appropriate to notify potential class members that they can seek further information about the case, and to include the contact information of defense attorneys").

Fifth, a neutral third-party administrator should administer and oversee the distribution of the notice instead of Plaintiff's counsel in order to ensure that the privacy of members of the putative collective is maintained. *See J.S. v. Attica Cent. Schs*, 2006 WL 581187, at *7 (W.D.N.Y. Mar. 7, 2006) (ordering use of impartial third party to mail notice to potential class members).

Finally, Plaintiff's proposed publication order is also problematic for many of the same reasons stated above.  (ECF Dkt. No. 59-4.)  Specifically, the publication order defines an overbroad putative collective and three year limitations period, states that Plaintiff's counsel will issue notice (rather than a third-party administrator), demands that the notice and claim form "be published in English and Chinese" (*see id*), and further inserts a clause that if "18% of Notices [are] returned as undeliverable with no forwarding address, Plaintiffs reserve the right...to request social security numbers of the individuals and to cause a copy of this Notice...to be published in a Chinese-language newspaper." (*Id*.) Mailing the notice form to the putative collective's  last known address is sufficient and Plaintiffs' additional proposed steps are unnecessary. *Hallissey v. America Online, Inc.*, 2008 WL 465112, *5 (S.D.N.Y. Feb. 19, 2008) (ordering notice be issued by first class mail and email).

### C.    Equitable Tolling Is Inappropriate

Plaintiffs request for equitable tolling during the notice period is unwarranted and should be denied.  "Equitable tolling is 'a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs.'"  *Hintergerger v. Catholic Health Sys*, 2009 WL 3464134, at *15 (W.D.N.Y. Oct. 21, 2009) (quoting *Wallace v. Kato*, 549 U.S. 384, 396 (2007). "In this Circuit, 'equitable tolling is only appropriate in [] rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights.'" *Hintergerger*, 2009 WL 3464134, at *14 (quoting *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d

74, 80 (2d Cir. 2003).  In *Hintergerger*, the Court found that that litigation delays are not an extraordinary circumstance and are not a basis to toll the statute of limitations.  *Id*. at *15.

Here, the fact that 15 individuals have purported to file opt-in notices with the Court demonstrates that no employee was prevented from exercising his or her rights.  Moreover, Plaintiffs have not set forth any basis that would justify tolling during any potential notice period.  Specifically, they have not demonstrated that a reasonably prudent potential plaintiff was deceived or coerced into not exercising his or rights to assert FLSA claims in this action. In addition, Plaintiff's own litigation delays are not a reason to extend any tolling period.[5] Plaintiffs filed their lawsuit over a year ago. At no point during the course of this litigation have Defendants denied Plaintiffs an opportunity to pursue their motion for conditional certification During this entire time, Plaintiffs neglected to seek conditional certification and in fact they only filed this motion because Defendants, on January 5, 2018, filed a pre-motion conference letter seeking to strike the opt-in notices of several individuals who purported to join the litigation as Plaintiffs.  On January 8, 2017, Your Honor denied Defendants' request and ordered Plaintiffs to file a motion for conditional certification by February 8, 2018.  (ECF Dkt. No. 54.)  Plaintiffs should not be rewarded for their own delay and their request for equitable tolling should be denied.

---

[5] During the period leading up to mediation, the parties agreed to toll the statute of limitations period from September 21, 2017 through November 7, 2017, a total of 47 days.

**IV.     CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' motion in its entirety.   Alternatively, in the event that the Court decides to conditionally certify a collective, the collective should only include delivery workers at the East Restaurant and should strike all of the opt-in plaintiffs who are not similarly situated to the named Plaintiffs.

Respectfully submitted,

Date:   March 22, 2018
New York, New York

/s/ A. Michael Weber
A. Michael Weber
Eli Z. Freedberg
Maayan Deker
Kevin K. Yam
LITTLER MENDELSON
A Professional Corporation
900 Third Avenue
New York, NY  10022.3298
212.583.9600

*Attorneys for Defendants*