TROY LAW, PLLC
*Attorneys for the Plaintiff, proposed FLSA*
*Collective Class, and potential Rule 23 Class*
John Troy (JT 0481)
41-25 Kissena Blvd., Suite 119
Flushing, NY 11355
Tel:    (718) 762-1324

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
GUOYI WANG,
TONG WEI WU,
ZHI QIANG LU,
TSUN MING FONG,
STEVEN CHEUNG,
QUEK YEOW YAP,
HAI PING WU,
WEIJUN ZHEN,
SHUDE ZHANG,
KEE YEW FOO,
TERRY WONG,
MING SUNG CHAN,
LEUNG TACK CHOI,
FONG YUE,
GUOLIANG XU,
BILLY QIN, and
MONALIZA WONG,
*on behalf of themselves and others similarly situated*,
                                  Plaintiffs,
                        v.
SHUN LEE PALACE RESTAURANT, INC.
       d/b/a Shun Lee Palace;
T & W RESTAURANT, INC.
      d/b/a Shun Lee West and
      d/b/a Shun Lee Café;
JOHN HWANG;
MICHAEL TONG;
BIN HU; and
WILLIAM HWANG
                           Defendants.
-------------------------------------------------------------x

**Case No: 17-cv-00840**

**29 U.S.C. § 216(b)**
**COLLECTIVE ACTION &**
**F.R.C.P. 23 CLASS ACTION**

**COMPLAINT**

      Plaintiffs GUOYI WANG, TONG WEI WU, ZHI QIANG LU, TSUN MING

FONG, STEVEN CHEUNG, QUEK YEOW YAP, HAI PING WU, WEIJUN ZHEN,

SHUDE ZHANG, KEE YEW FOO, TERRY WONG, MING SUNG CHAN, LEUNG TACK CHOI, FONG YUE, GUOLIANG XU, BILLY QIN, and MONALIZA WONG, (hereinafter referred to as "Plaintiffs"), on behalf of themselves and others similarly situated, by and through his attorney, Troy Law, PLLC, hereby brings this complaint against Defendants SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace; T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café; JOHN HWANG; MICHAEL TONG; BIN HU; and WILLIAM HWANG (hereinafter referred to as "Defendants").

## INTRODUCTION

1. This action is brought by Plaintiffs, on behalf of themselves as well as other similarly situated employees against Defendants for alleged violations of the Federal Labor Standards Act, ("FLSA") 29 U.S.C. § 201 *et seq.* and of the New York Labor Law (NYLL), arising from Defendants' various willful and unlawful employment policies, patterns and/or practices.

2. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) liquidated damages, (4) prejudgment and post-judgment interest; and/or (5) attorneys' fees and costs.

3. Plaintiffs further allege pursuant to New York Labor Law § 650 *et seq.* and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid minimum wage compensation, (2) unpaid overtime wage compensation, (3) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and

payday, (4) up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that accurately and truthfully lists employee's hours along with the name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day, (5) liquidated damages equal to the sum of unpaid minimum wage, unpaid "spread of hours" premium, unpaid overtime in the amount of twenty five percent under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, (6) 9% simple prejudgment interest provided by NYLL, (7) post-judgment interest, and (8) attorney's fees and costs.

## JURISDICTION AND VENUE

4. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331.

5. This Court has jurisdiction over state law claims asserted here pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

7. Plaintiff GUOYI WANG was employed by Defendants at Corporate Defendant

SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

8.  Plaintiff TONG WEI WU was employed by Defendants at Corporate Defendant T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café located at 43 West 65th Street, New York, NY 10023.

9.  Plaintiff ZHI QIANG LU was employed by Defendants at Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022 and at Corporate Defendant T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café located at 43 West 65th Street, New York, NY 10023.

10. From 1998 to 2000, 2001 to 2002, 2006 to 2008, and again from on or about March 26, 2011 to the present day, Plaintiff QUEK YEOW YAP was employed by Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

11. From on or about November 01, 2016 to April 10, 2017, Plaintiff HAI PING WU was employed by Defendants to work as a Delivery at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

12. From on or about January 01, 1998 to the present day, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen was employed by Defendants to work as a Bartender at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

13. From on or about April 15, 2013 to November 15, 2013, Plaintiff GUOLIANG

XU was employed by Defendants to work as a Delivery at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

14. From 1977 to the present day, Plaintiff STEVEN CHEUNG was employed by Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

15. From October 1994 to the present day, Plaintiff TSUN MING FONG was employed by Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

16. From on or about December 1988 to the present day, Plaintiff KEE YEW FOO was employed by Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

17. From on or about October 31, 2004 to February 22, 2009 and again from October 31, 2014 to August 31, 2018, Plaintiff SHUDE ZHANG was employed by Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

18. From on or about November 01, 2011 to September 18, 2018, Plaintiff MING SUNG CHAN was employed by Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

19. From February 1991 to the present day, Plaintiff FONG YUE was employed by

Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

20. From on or about February 1988 to the present day, Plaintiff LEUNG TAK CHOI was employed by Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

21. From on or about March 25, 2012 to June 04, 2017, Plaintiff TERRY WONG was employed by Defendants to work as a Waiter at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

22. From on or about March 23, 2013 to June 2015, and again from May 01, 2016, Plaintiff BILLY QIN was employed by Defendants to work as a Waiter Captian at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

23. From on or about October 12, 1997 to the present day, Plaintiff MONALIZA WONG was employed by Defendants to work as a Waitress at SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 E 55th St, New York, NY 10022.

## DEFENDANTS

### Corporate Defendants

24. Corporate Defendant SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace is a domestic business corporation organized under the laws of the State of New York with a principal address at 155 East 55th Street, New York, NY 10022.

25. SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

26. SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace purchased and handled goods moved in interstate commerce.

27. Corporate Defendant T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café is a domestic business corporation organized under the laws of the State of New York with a principal address at 43 West 65th Street, New York, NY 10023.

28. T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café is a business engaged in interstate commerce that has gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year.

29. T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café purchased and handled goods moved in interstate commerce.

30. Corporate Defendants are owned and controlled by Owner/ Operator Defendants MICHAEL TONG, BIN HU, WILLIAM HWANG, and JOHN HWANG.

***Owner/ Operator Defendants***

31. The Individual Defendants are officers, directors, managers and/or majority shareholders or owners of the Corporate Defendants SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café. As they are each individually one of the ten largest shareholders, they are individually responsible for unpaid wages under the New York Business Corporation Law.

32. Owner/ Operator Defendant MICHAEL TONG, known as "Boss" to Plaintiffs, (1) had the power to hire and fire SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace employees and T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café employees, including Plaintiffs, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment of employees, and (4) maintained employee records.

33. MICHAEL TONG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2 and the regulations thereunder, and is jointly and severally liable with both SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café.

34. Owner/ Operator Defendant BIN HU, known as "Boss" to Plaintiffs, (1) had the power to hire and fire SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace employees and T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café employees, including Plaintiffs, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment of employees, and (4) maintained employee records.

35. BIN HU acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2 and the regulations thereunder, and is jointly and severally liable with both SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC.

d/b/a Shun Lee West and d/b/a Shun Lee Café.

36. Owner/ Operator Defendant WILLIAM HWANG, known as "Boss" to Plaintiffs, (1) had the power to hire and fire SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace employees and T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café employees, including Plaintiffs, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment of employees, and (4) maintained employee records.

37. WILLIAM HWANG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2 and the regulations thereunder, and is jointly and severally liable with both SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café.

38. Owner/ Operator Defendant JOHN HWANG, known as "Boss" to Plaintiffs, (1) had the power to hire and fire SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace employees and T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café employees, including Plaintiffs, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment of employees, and (4) maintained employee records.

39. JOHN HWANG acted intentionally and maliciously and is an employer pursuant to FLSA, 29 U.S.C. §203d, and regulations promulgated thereunder, U.S.C. §203d, and regulations promulgated thereunder, 29 C.F.R. §791.2 and the regulations thereunder, and is jointly and severally liable with both SHUN LEE PALACE

RESTAURANT, INC. d/b/a Shun Lee Palace and T & W RESTAURANT, INC.

d/b/a Shun Lee West and d/b/a Shun Lee Café.

## STATEMENT OF FACTS

*Plaintiff GUOYI WANG*

40. From on or about November 2008 to July 2009 and on or about June 2010 to

February 2011, Plaintiff GUOYI WANG was employed by Defendants to work as a

deliveryman for SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace

located at 155 East 55th Street, New York, NY 10022.

41. For all relevant times, Plaintiff GUOYI WANG worked from:

      a.   11:00 to 22:00 for eleven (11) hours each day for six (6) days and sixty-six

            (66) hours a week, with one day off per week. The one day off per week

            was not fixed but would be on a Monday, Tuesday, or Wednesday.

42. However, for all relevant times, Plaintiff GUOYI WANG was required to stay after

his regular hours each for an average of forty-five (45) minutes each day for three (3)

to four (4) days for two and a half (2.5) hours per week.

43. For all relevant times, Plaintiff GUOYI WANG would not take any break.

44. As a result, for all relevant times, Plaintiff GUOYI WANG worked around sixty-

eight and a half (68.5) hours per week.

45. For all relevant times, Plaintiff GUOYI WANG was paid the deliverymen

subminimum wage for each hour worked.

46. At all relevant times, Plaintiff GUOYI WANG was also not informed of his hourly

pay rate or any tip deductions towards the minimum wage, and he was not paid

overtime pay for overtime work.

47. Defendants never informed Plaintiff GUOYI WANG that they were taking tip credit

towards the minimum wage.

48. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff GUOYI WANG his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

49. While employed by Defendants, Plaintiff GUOYI WANG was not exempt under federal and state laws requiring employers to pay employees overtime.

50. For all relevant times, Defendants required Plaintiff GUOYI WANG to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

51. Plaintiff GUOYI WANG purchased a bicycle for approximately forty-three dollars ($43.00) upon commencement of his employment with Defendants for the sole purpose of delivery orders for Defendants' benefit.

52. Defendants have failed to pay Plaintiff GUOYI WANG for any of the bicycle's required maintenance and/or repair costs.

53. Defendants have failed to reimburse Plaintiff GUOYI WANG for the maintenance and/or repair costs.

**_Plaintiff TONG WEI WU_**

54. From on or about September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU was employed by Defendants to work as a deliveryman for T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café located at 43 West 65th Street, New York, NY 10023.

55. From on or about September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU worked from:

    b. 16:30 to 22:30 for six (6) hours each day on Tuesdays, Thursdays, Fridays, and Saturdays for four (4) days and from 15:30 to 22:30 for seven (7) hours on Sundays for thirty-one (31) hours a week, with Mondays and Wednesdays off.

    c. About once a week, Plaintiff TONG WEI WU was required to work additionally from 11:00 to 16:30 for five and a half (5.5) hours.

56. From September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU would not take any break.

57. As a result, from September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU worked around thirty-six and a half (36.5) hours per week.

58. From September 20, 2009 to September 11, 2014, Plaintiff TONG WEI WU was paid the deliverymen subminimum wage for each hour worked.

59. At all relevant times, Plaintiff TONG WEI WU was also not informed of his hourly pay rate or any tip deductions towards the minimum wage, and he was not paid overtime pay for overtime work.

60. Defendants never informed Plaintiff TONG WEI WU that they were taking tip credit towards the minimum wage.

61. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff TONG WEI WU his lawful overtime compensation of one and one half times (1.5x) their regular rate of pay for all hours worked over forty (40) in a given workweek.

62. While employed by Defendants, Plaintiff TONG WEI WU was not exempt under

federal and state laws requiring employers to pay employees overtime.

63. For all relevant times, Defendants required Plaintiff TONG WEI WU to use and maintain a delivery bicycle to benefit Defendants' business. Defendants also required Plaintiff to maintain the vehicle. Defendants did not compensate for the purchase, repair, maintenance, and utilization of the bicycle according to state federal labor laws.

64. Plaintiff TONG WEI WU purchased an electronic bicycle for approximately one thousand and four hundred dollars ($1400.00) upon commencement of his employment with Defendants in September 2009 for the sole purpose of delivery orders for Defendants' benefit. However this first electronic bicycle broke down irreparably and Plaintiff TONG WEI WU purchased a second electronic bicycle for one thousand and four hundred dollars ($1400.00) in 2011. This second bicycle also eventually broke down irreparably and Plaintiff purchased a third electronic bicycle for approximately seven hundred dollars ($700.00) in 2012.

65. Throughout Plaintiff TONG WEI WU's employment, Plaintiff replaced the battery four times at a cost of approximately four hundred dollars ($400.00) each time. The replacement of the battery was a necessary maintenance cost of the electronic bicycle.

66. Defendants have failed to pay Plaintiff TONG WEI WU for any of the bicycle's required maintenance and/or repair costs.

67. Defendants have failed to reimburse Plaintiff TONG WEI WU for the maintenance and/or repair costs.

*Plaintiff ZHI QIANG LU*

68. From on or about March 2012 to December 2012, Plaintiff ZHI QIANG LU was employed by Defendants to work as a deliveryman for SHUN LEE PALACE RESTAURANT, INC. d/b/a Shun Lee Palace located at 155 East 55th Street, New York, NY 10022.

69. From on or about November 2014 to August 31, 2016, Plaintiff ZHI QIANG LU was employed by Defendants to work as a deliveryman for T & W RESTAURANT, INC. d/b/a Shun Lee West and d/b/a Shun Lee Café located at 43 West 65th Street, New York, NY 10023.

70. Plaintiff ZHI QIANG LU was hired by individual defendant MICHAEL TONG.

71. From on or about March 2012 to December 2012, Plaintiff ZHI QIANG LU worked from:

    d. 10:30 to 21:00 for ten and a half (10.5) hours each day for three (3) days and from 16:30 to 21:30 for five (5) hours for two (2) days a week for forty-one and a half (41.5) hours a week.

    e. About once a week, Plaintiff ZHI QIANG LU was required to stay back and work an additional hour.

72. From March 2012 to December 2012, Plaintiff ZHI QIANG LU would not take any break.

73. As a result, from March 2012 to December 2012, Plaintiff ZHI QIANG LU worked around forty-two and a half (42.5) hours per week.

74. From on or about November 2014 to August 31, 2016, Plaintiff ZHI QIANG LU worked from:

    f. 16:30 to 21:30 for five (5) hours each day on Tuesdays, Wednesdays and

Saturdays for three (3) days, 18:00-23:30 for five and a half (5.5) hours on

Fridays and from 15:30 to 22:30 for seven (7) hours on Sundays for

twenty-seven and a half (27.5) hours a week.

g.   In addition to his regular hours of employment, Plaintiff was required to

show up earlier and work for 40 minutes performing "sidework" including

cutting paper, work with soup boxes, peeling beans, and season beans.

75. From November 2014 to August 31, 2016, Plaintiff ZHI QIANG LU would not take

any break.

76. As a result, from November 2014 to August 31, 2016, Plaintiff ZHI QIANG LU

worked around thirty and eighty-three tenths (30.83) hours per week.

77. For all relevant times, Plaintiff ZHI QIANG LU was paid the deliverymen

subminimum wage for each hour worked.

78. At all relevant times, Plaintiff ZHI QIANG LU was also not informed of his hourly

pay rate or any tip deductions towards the minimum wage, and he was not paid

overtime pay for overtime work.

79. Defendants never informed Plaintiff ZHI QIANG LU that they were taking tip credit

towards the minimum wage.

80. At all relevant times, Defendants knowingly and willfully failed to pay Plaintiff ZHI

QIANG LU his lawful overtime compensation of one and one half times (1.5x) their

regular rate of pay for all hours worked over forty (40) in a given workweek.

81. While employed by Defendants, Plaintiff ZHI QIANG LU was not exempt under

federal and state laws requiring employers to pay employees overtime.

82. For all relevant times, Defendants required Plaintiff ZHI QIANG LU to use and

maintain a delivery bicycle to benefit Defendants' business. Defendants also

required Plaintiff to maintain the vehicle. Defendants did not compensate for the

purchase, repair, maintenance, and utilization of the bicycle according to state

federal labor laws.

83. Plaintiff ZHI QIANG LU purchased an electronic bicycle for approximately six

hundred and eighty ($680.00) upon commencement of his second term of

employment in November 2014 with Defendants for the sole purpose of delivery

orders for Defendants' benefit.

84. Plaintiff ZHI QIANG LU's bicycle needed to be repaired frequently, often two or

three times a month. These repairs cost him approximately $300 per year.

85. In early 2016, Plaintiff ZHI QIANG LU's bicycle broke down irreparably. Plaintiff

then proceeded to purchase another electronic bicycle for six hundred and eighty

($680.00) for the sole purpose of delivery orders for Defendants' benefit.

86. After purchasing the second bicycle, individual Defendant MICHAEL TONG

partially reimbursed Plaintiff ZHI QIANG LU for the costs with a check in the

amount of five-hundred dollars ($500.00).

87. Defendants have failed to sufficiently compensate Plaintiff ZHI QIANG LU for any

of the bicycle's required maintenance and/or repair costs.

88. Defendants have failed to sufficiently reimburse Plaintiff ZHI QIANG LU for the

maintenance and/or repair costs.

*Plaintiff QUEK YEOW YAP*

89. From 1998 to 2000, 2001 to 2002, 2006 to 2008, and again from on or about March

26, 2011 to the present day, Plaintiff QUEK YEOW YAP was employed by

Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

90. From on or about March 06, 2009 to March 05, 2011, Plaintiff QUEK YEOW YAP's regular work schedule ran from:

    a. 11:45 to 15:45 and then again from 17:30 to 22:00 for nine and a quarter (9.25) hours on Monday, Tuesday, Wednesday, Thursday, Sunday for five (5) days and a total of forty six and a quarter (46.25) hours a week.

91. From on or about March 06, 2011 to the present day, Plaintiff QUEK YEOW YAP's regular work schedule ran from:

    a. 11:45 to 15:45 and then again from 17:45 to 21:45 for eight (8) hours on Monday, Tuesday, Wednesday, Thursday, Sunday for five (5) days and a total of forty (40) hours a week.

92. The days off, however, is not fixed.

93. Sometimes, during the relevant time period, Plaintiff QUEK YEOW YAP had to work for six (6) days, usually between the months of November and December for one (1) or two (2) times each month before the change in owner on June 18, 2015.

94. From on or about January 01, 2011 to December 31, 2015, Plaintiff QUEK YEOW YAP was paid a flat compensation at a rate of five dollars ($5.00) per hour.

95. From on or about January 01, 2016 to December 31, 2017 , Plaintiff QUEK YEOW YAP was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

96. From on or about January 01, 2018 to December 31, 2018, Plaintiff QUEK YEOW YAP was paid a flat compensation at a rate of nine dollars ($8.65) per hour.

97. From on or about January 01, 2019 to the present day, Plaintiff QUEK YEOW YAP

was paid a flat compensation at a rate of ten dollars ($10.00) per hour.

98. At all relevant times, for hours in which they worked over forty (40) hours in a workweek, Plaintiff QUEK YEOW YAP was not paid overtime pay for overtime work.

99. At all relevant times, Plaintiff QUEK YEOW YAP was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

100. Further, at all relevant times, Plaintiff QUEK YEOW YAP had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

101. Further, at all relevant times, Plaintiff QUEK YEOW YAP had his tips misappropriated by sharing tips with the non-tipped employees.

102. At all relevant times, Plaintiff QUEK YEOW YAP's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

103. Throughout his employment, Plaintiff QUEK YEOW YAP was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

104. Throughout his employment, Plaintiff QUEK YEOW YAP was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

105. Throughout his employment, Plaintiff QUEK YEOW YAP was not compensated

for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff HAI PING WU

106. From on or about November 2016 to April 10, 2017, Plaintiff HAI PING WU was employed by Defendants to work as a Delivery at 155 E 55th St, New York, NY 10022.

107. From on or about November 01, 2016 to April 10, 2017, Plaintiff HAI PING WU's regular work schedule ran from:

    a. between 11:00 to 14:00 or from 11:30 to 14:30, and then again from 16:30 to 21:30 for an average of eight (8) hours for three (3) days and twenty four (24) hours a week;

    b. 14:30 to 23:00 one day for eight and a half (8.5) hours a week;

    c. 16:00 to 22:00 on Sundays for six (6) hours a week.

108. In addition, Plaintiff would not break for around half (.5) an hour for two (2) days and one (1) additional hour a week for a total of forty (40) hours each week.

109. At all relevant times, Plaintiff HAI PING WU did not have a fixed time for lunch or for dinner.

110. From on or about November 01, 2016 to April 10, 2017, Plaintiff HAI PING WU was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

111. At all relevant times, Plaintiff HAI PING WU was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

112. Further, at all relevant times, Plaintiff HAI PING WU had to do and pack sauce, dry noodles, cut paper boards, and take delivery accessories from the basement.

113. Throughout his employment, Plaintiff HAI PING WU was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

114. Throughout his employment, Plaintiff HAI PING WU was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

115. As part of Plaintiff's employment with Defendants, Plaintiff HAI PING WU was required to bear the cost of the purchase of electric bicycle for a total of One Thousand Five Hundred Dollars ($1,500) every one and one half (1.5) years.

116. Plaintiff HAI PING WU was not reimbursed by Defendants for the cost of maintaining the delivery vehicle for Defendants' benefit.

### Plaintiff WEIJUN ZHEN

117. From on or about 1998 to the present day, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen was employed by Defendants to work as a Bartender at 155 E 55th St, New York, NY 10022.

118. From on or about June 18, 2011 to June 17, 2014, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen's regular work schedule ran from:

   a. 11:30 to 15:30 and again from 17:30 to 21:45 on Monday, Tuesday, Wednesday, Thursday, and Friday for eight point two five (8.25) hours for five (5) days and forty seven and a quarter (41.25) hours per week;

b. from 14:00 to 22:00 on Saturday for one (1) day and eight (8) hours a week.

119. As a result, from June 18, 2011 to June 17. 2014, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen worked for a total of forty-nine and a quarter (49.25) hours each week.

120. From on or about June 18, 2015 to the present day, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen's regular work schedule ran from

a. 11:45 to 15:45, and then again from 17:45 to 21:45 for eight (8) hours on Monday, Tuesday, Wednesday, Thursday, and Friday for five (5) days and twenty four (40) hours a week.

121. At all relevant times, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen did not have a fixed time for lunch or for dinner.

122. From on or about June 18, 2011 to June 17, 2014, Plaintiff WEIJUN ZHEN A/K/A SAM ZHEN was paid at a rate of ten dollars ($10.18) per hour.

123. However, from on or about June 18, 2011 to June 17, 2014, Plaintiff WEIJUN ZHEN was only paid for forty five (45) of the hours worked.

124. As a result, from on or about June 18, 2011 to June 17, 2014, Plaintiff WEIJUN ZHEN was not paid for all hours worked.

125. From on or about June 18, 2015 to the present day, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen was paid a flat compensation at a rate of fourteen dollars ($13.75) per hour.

126. At all relevant times, Plaintiff WEIJUN ZHEN had his tips misappropriated by sharing tips with the non-tipped employees.

127. At all relevant times, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen was not paid

overtime pay for all overtime work.

128. Throughout his employment, Plaintiff WEIJUN ZHEN a/k/a Sam Zhen was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

129. Throughout his employment, Plaintiff WEIJUN ZHEN A/K/A SAM ZHEN was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

130. Throughout his employment, Plaintiff WEIJUN ZHEN A/K/A SAM ZHEN was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff GUOLIANG XU

131. From on or about April 15, 2013 to November 15, 2013, Plaintiff GUOLIANG XU was employed by Defendants to work as a Delivery at 155 E 55th St, New York, NY 10022.

132. From on or about April 15, 2013 to November 15, 2013, Plaintiff GUOLIANG XU's regular work schedule ran from:

   a. 11:00 to 22:00 with a two (2) hour break for nine (9) hours a day for six (6) days (with the day off not fixed) and 54 hours per week.

133. In addition, three (3) to four (4) days a week, Plaintiff is required to stay forty-five (45) minutes late and two point six two five (2.625) hours a week.

134.  As a result, from on or about April 15, 2013 to November 15, 2013, Plaintiff GUOLIANG XU worked a total of fifty-six point six two five (56.625) hours each week.

135.  At all relevant times, Plaintiff GUOLIANG XU did not have a fixed time for lunch or for dinner.

136.  From on or about April 15, 2013 to November 15, 2013, Plaintiff GUOLIANG XU was paid a flat compensation at a rate of six dollars ($5.65) per hour

137.  At all relevant times, Plaintiff GUOLIANG XU was not paid overtime pay for overtime work.

138.  At all relevant times, Plaintiff GUOLIANG XU was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

139.  Further, at all relevant times, Plaintiff GUOLIANG XU had to do sauces for the restaurant.

140.  At all relevant times, Plaintiff GUOLIANG XU had his tips misappropriated by sharing tips with the non-tipped employees.

141.  Throughout his employment, Plaintiff GUOLIANG XU was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

142.  Throughout his employment, Plaintiff GUOLIANG XU was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above

forty (40) in each workweek.

143. Throughout his employment, Plaintiff GUOLIANG XU was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

144. As part of Plaintiff's employment with Defendants, Plaintiff GUOLIANG XU was required to bear the cost of the purchase of electric bicycles at a price of One Thousand Four Hundred Fifty Dollars ($1,450) each and bicycle at a price of Three Hundred Dollars ($300) each plus Six Hundred Dollars ($600) to maintain.

145. Plaintiff GUOLIANG XU was not reimbursed by Defendants for the cost of maintaining the delivery vehicle for Defendants' benefit.

146. Indeed, Defendants expressly promised to pay the penalty of five hundred dollars ($500) for the electric bicycle but did not pay.

147. The Defendants also did not reimburse Plaintiff for the cost of an electric bicycle that was towed away in front at the restaurant.

### Plaintiff STEVEN CHEUNG

148. From 1977 to the present day, Plaintiff STEVEN CHEUNG was employed by Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

149. From 2011 to the present day, Plaintiff STEVEN CHEUNG's regular work schedule ran from:

   a. 12:00 to 16:00 and then again from 17:30 to 22:00 for eight and a half (8.5) hours on Sunday, Monday, Tuesday, Wednesday, and Thursday for five (5) days and forty two point five (42.5) hours a week.

150. Each day, the plaintiff is required to arrive half (0.5) hour early for five (5)

days and two point five (2.5) hours a week.

151.    In addition, two (2) to three (3) days a week the plaintiff has to stay for an extended thirty (30) minutes to an hour for one point eight seven five (1.875) hours a week for a total of forty-six point eight seven five (46.875) hours each week.

152.    At all relevant times, Plaintiff STEVEN CHEUNG did not have a fixed time for lunch or for dinner.

153.    From on or about January 01, 2011 to December 31, 2015, Plaintiff STEVEN CHEUNG was paid a flat compensation at a rate of five dollars ($5.00) per hour.

154.    From on or about January 01, 2016 to December 31, 2017 , Plaintiff STEVEN CHEUNG was paid a flat compensation at a rate of eight dollars ($7.50) per hour for each hour worked.

155.    From on or about January 01, 2018 to December 31, 2018, Plaintiff STEVEN CHEUNG was paid a flat compensation at a rate of nine dollars ($8.65) per hour for each hour worked.

156.    From on or about January 01, 2019 to the present day, Plaintiff STEVEN CHEUNG was paid a flat compensation at a rate of ten dollars ($10.00) per hour for each hour worked.

157.    At all relevant times, Plaintiff STEVEN CHEUNG was not paid for all hours worked.

158.    At all relevant times, Plaintiff STEVEN CHEUNG was not paid overtime pay for all overtime work.

159.    Further, at all relevant times, Plaintiff STEVEN CHEUNG had to do

miscellaneous kitchen work for one and a half (1.5) hours from 14:00 to 15:30, peel four-season beans, snow peas, and bean sprouts for restocking for one (1) to two (2) hours each workday.

160. At all relevant times, Plaintiff STEVEN CHEUNG's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

161. At all relevant times, Plaintiff STEVEN CHEUNG had his tips misappropriated by sharing tips with the non-tipped employees.

162. Throughout his employment, Plaintiff STEVEN CHEUNG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

163. Throughout his employment, Plaintiff STEVEN CHEUNG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

164. Throughout his employment, Plaintiff STEVEN CHEUNG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

*Plaintiff TSUN MING FONG*

165. From on or about October 1994 to the present day, Plaintiff TSUN MING FONG was employed by Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

166. From on or about October 1994 to the present day, Plaintiff TSUN MING FONG's regular work schedule ran from:

   a. 11:35 to 22:00 with 1.5 hour break in between which is eight point ninety-two (8.92) hours a day for five (5) days and forty four point six (44.6) hours a week.

167. In addition, Plaintiff would need to stay around half (.5) an hour longer on Saturday and Sunday for two (2) days and one (1) additional hours a week. for a total of forty-five point six (45.6) hours each week.

168. At all relevant times, Plaintiff TSUN MING FONG was not paid for all hours worked.

169. At all relevant times, Plaintiff TSUN MING FONG did not have a fixed time for lunch or for dinner.

170. From on or about January 01, 2011 to December 31, 2015, Plaintiff TSUN MING FONG was paid a flat compensation at a rate of five dollars ($5.00) per hour, occationally paid $4.65 per hour.

171. From on or about January 01, 2016 to December 31, 2017 , Plaintiff TSUN MING FONG was paid a flat compensation at a rate of eight dollars ($7.50) per hour for each hour worked.

172. From on or about January 01, 2018 to December 31, 2018, Plaintiff TSUN MING FONG was paid a flat compensation at a rate of nine dollars ($8.65) per hour for each hour worked.

173. From on or about January 01, 2019 to to the present day, Plaintiff TSUN MING FONG was paid a flat compensation at a rate of ten dollars ($10.00) per hour for

each hour worked.

174. However, at all relevant times, Plaintiff TSUN MING FONG was not paid for all hours worked.

175. Instead, Plaintiff TSUN MING FONG was regularly paid only forty (40) hours each workweek.

176. At all relevant times, Plaintiff TSUN MING FONG was not paid overtime pay for overtime work.

177. Further, at all relevant times, Plaintiff TSUN MING FONG had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

178. Further, at all relevant times, Plaintiff TSUN MING FONG had his tips misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

179. At all relevant times, Plaintiff TSUN MING FONG's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

180. Throughout his employment, Plaintiff TSUN MING FONG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

181. Throughout his employment, Plaintiff TSUN MING FONG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above

forty (40) in each workweek.

182.   Throughout his employment, Plaintiff TSUN MING FONG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

***Plaintiff KEE YEW FOO***

183.   From on or about December 1988 to the present day, Plaintiff KEE YEW FOO was employed by Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

184.   From on or about December 1988 to the present day, Plaintiff KEE YEW FOO's regular work schedule ran from:

   a.  11:35 to 22:00 with 1.5 hour break in between which is eight point ninety-two (8.92) hours a day for five (5) days and forty four point six (44.6) hours a week.

185.   In addition, Plaintiff would need to stay around half (.5) an hour longer on Saturday and Sunday for two (2) days and one (1) additional hours a week. for a total of forty-five point six (45.6) hours each week.

186.   At all relevant times, Plaintiff KEE YEW FOO did not have a fixed time for lunch or for dinner.

187.   From on or about January 01, 2011 to December 31, 2015, Plaintiff KEE YEW FOO was paid a flat compensation at a rate of five dollars ($5.00) per hour.

188.   From on or about January 01, 2016 to December 31, 2017 , Plaintiff KEE YEW FOO was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

189. From on or about January 01, 2018 to December 31, 2018, Plaintiff KEE YEW FOO was paid a flat compensation at a rate of nine dollars ($8.65) per hour.

190. From on or about January 01, 2019 to the present day, Plaintiff KEE YEW FOO was paid a flat compensation at a rate of ten dollars ($10.00) per hour for each hour worked.

191. However, at all relevant times, Plaintiff KEE YEW FOO was not paid for all hours worked.

192. Instead, Plaintiff KEE YEW FOO was regularly paid only forty (40) hours each workweek.

193. At all relevant times, Plaintiff KEE YEW FOO was not paid overtime pay for overtime work.

194. At all relevant times, Plaintiff KEE YEW FOO was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

195. Further, at all relevant times, Plaintiff KEE YEW FOO had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

196. Further, at all relevant times, Plaintiff KEE YEW FOO had his tips misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

197. At all relevant times, Plaintiff KEE YEW FOO's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

198. Throughout his employment, Plaintiff KEE YEW FOO was not given a statement with his weekly payment reflecting employee's name, employer's

name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

199.   Throughout his employment, Plaintiff KEE YEW FOO was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

200.   Throughout his employment, Plaintiff KEE YEW FOO was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff SHUDE ZHANG

201.   From on or about October 31, 2004 to February 22, 2009 and October 31, 2014 to August 31, 2018, Plaintiff SHUDE ZHANG was employed by Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

202.   From on or about October 31, 2004 to August 31, 2018, Plaintiff SHUDE ZHANG's regular work schedule ran from 11:35 to 22:00 with 1.5 hour break inbetween which is eight point ninety-two 8.92 hours a day for five (5) days and forty four point six (44.6) hours a week; In addition, Plaintiff would need to stay around half (.5) an hour longer on Friday and Saturday for two (2) days and one (1) additional hours a week for a total of forty five point six (45.6) hours each week.

203.   At all relevant times, Plaintiff SHUDE ZHANG did not have a fixed time for lunch or for dinner.

204. From on or about October 31, 2014 to December 31, 2015, Plaintiff SHUDE ZHANG was paid a flat compensation at a rate of five dollars ($5.00) per hour.

205. From on or about January 01, 2016 to December 31, 2017 , Plaintiff SHUDE ZHANG was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

206. From on or about January 01, 2018 to August 31, 2018, Plaintiff SHUDE ZHANG was paid a flat compensation at a rate of nine dollars ($8.65) per hour.

207. At all relevant times, Plaintiff SHUDE ZHANG was not paid overtime pay for overtime work.

208. Further, at all relevant times, Plaintiff SHUDE ZHANG had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

209. Further, at all relevant times, Plaintiff SHUDE ZHANG had his tips misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

210. At all relevant times, Plaintiff SHUDE ZHANG's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

211. Throughout his employment, Plaintiff SHUDE ZHANG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

212. Throughout his employment, Plaintiff SHUDE ZHANG was not compensated

at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

213. Throughout his employment, Plaintiff SHUDE ZHANG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff MING SUNG CHAN

214. From on or about November 2011 to September 18, 2018, Plaintiff MING SUNG CHAN was employed by Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

215. From on or about November 2011 to September 18, 2018, Plaintiff MING SUNG CHAN's regular work schedule ran from 11:35 to 22:00 with 1.5 hour break inbetween which is eight point ninety-two 8.92 hours a day for five (5) days and forty four point six (44.6) hours a week; In addition, Plaintiff would need to stay around half (.5) an hour longer on Saturday and Sunday for two (2) days and one (1) additional hours a week for a total of forty five point six (45.6) hours each week.

216. At all relevant times, Plaintiff MING SUNG CHAN did not have a fixed time for lunch or for dinner.

217. From on or about November 2011 to December 31, 2015, Plaintiff MING SUNG CHAN was paid a flat compensation at a rate of five dollars ($5.00) per hour.

218. From on or about January 01, 2016 to December 31, 2017 , Plaintiff MING SUNG CHAN was paid a flat compensation at a rate of eight dollars ($7.50) per

hour for each hour worked, including for hours I worked in excess of forty (40) hours in a workweek.

219.   From on or about January 01, 2018 to September 18, 2018, Plaintiff MING SUNG CHAN was paid a flat compensation at a rate of nine dollars ($8.65) per hour for each hour worked, including for hours I worked in excess of forty (40) hours in a workweek.

220.   At all relevant times, Plaintiff MING SUNG CHAN was not paid overtime pay for overtime work.

221.   Further, at all relevant times, Plaintiff MING SUNG CHAN had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

222.   Further, at all relevant times, Plaintiff MING SUNG CHAN had his tips misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

223.   At all relevant times, Plaintiff MING SUNG CHAN's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

224.   Throughout his employment, Plaintiff MING SUNG CHAN was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

225.   Throughout his employment, Plaintiff MING SUNG CHAN was not

compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

226. Throughout his employment, Plaintiff MING SUNG CHAN was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff FONG YUE

227. From on or about February 1991 to the present day, Plaintiff FONG YUE was employed by Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

228. From on or about February 1991 to June 17, 2015, Plaintiff FONG YUE's regular work schedule ran from:

    a. 10:30 to 16:00 and then again from 17:30 to 22:00 on Tuesday, Wednesday, Thursday, Friday and Saturday for five (5) days and fifty (50) hours a week.

229. From on or about June 18, 2015 to the present day, Plaintiff FONG YUE's regular work schedule ran from:

    a. 11:45 to 15:45 and then again from 17:45 to 21:45 on Tuesday, Wednesday, Thursday, Friday, Saturday for a total of forty (40) hours each week.

230. From on or about January 01, 2011 to December 31, 2015, Plaintiff FONG YUE was paid a flat compensation at a rate of five dollars ($5.00) per hour.

231. From on or about January 01, 2016 to December 31, 2017 , Plaintiff FONG YUE was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

232.   From on or about January 01, 2018 to December 31, 2018, Plaintiff FONG YUE was paid a flat compensation at a rate of nine dollars ($8.65) per hour.

233.   From on or about January 01, 2019 to the present day, Plaintiff FONG YUE was paid a flat compensation at a rate of ten dollars ($10.00) per hour.

234.   At all relevant times, Plaintiff FONG YUE was not paid overtime pay for overtime work.

235.   Further, at all relevant times, Plaintiff FONG YUE had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

236.   Further, at all relevant times, Plaintiff FONG YUE had his tips misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

237.   At all relevant times, Plaintiff FONG YUE's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

238.   Throughout his employment, Plaintiff FONG YUE was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

239.   Throughout his employment, Plaintiff FONG YUE was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

240. Throughout his employment, Plaintiff FONG YUE was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

**Plaintiff LEUNG TACK CHOI**

241. From on or about February 1988 to to the present day, Plaintiff LEUNG TAK CHOI was employed by Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

242. From on or about February 1988 to the present day, Plaintiff LEUNG TAK CHOI's regular work schedule ran depending on whether that week's shift was an "Early shift" or "Late shift":

   a. ***Early shift (alternating weeks)***—

      i. from 11:45 to 15:45 for four (4) hours;

      ii. Break from 15:45 to 17:45 for two (2) Hours; and then again

      iii. from 17:45 to 21:45 for four (4) hours on Monday, Tuesday, Wednesday, Thursday, Sunday for five (5) days and a total of forty (40) hours a week.

   b. ***Late Shift (alternating weeks)***—

      i. from 15:45 to 23:45 for eight (8) hours on Monday, Tuesday, Wednesday, Friday, and Sunday for five (5) days and forty (40) hours a week for a total of forty (40) hours each week.

243. At all relevant times, Plaintiff LEUNG TAK CHOI did not have a fixed time for lunch or for dinner.

244. From February 1998 to June 17, 2015, Plaintiff was required to go in around

11:00 or 11:15 to begin for work.

245. As a result, during this time period, Plaintiff was required to work an additional

246. From on or about January 01, 2011 to December 31, 2015, Plaintiff LEUNG TAK CHOI was paid a flat compensation at a rate of five dollars ($5.00) per hour.

247. From on or about January 01, 2016 to December 31, 2017 , Plaintiff LEUNG TAK CHOI was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

248. From on or about January 01, 2018 to the present day, Plaintiff LEUNG TAK CHOI was paid a flat compensation at a rate of nine dollars ($8.65) per hour.

249. At all relevant times, Plaintiff LEUNG TAK CHOI was not paid overtime pay for overtime work.

250. Further, at all relevant times, Plaintiff LEUNG TAK CHOI had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

251. Further, at all relevant times, Plaintiff LEUNG TAK CHOI had his tips misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

252. At all relevant times, Plaintiff LEUNG TAK CHOI's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

253. Throughout his employment, Plaintiff LEUNG TAK CHOI was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay,

any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

254. Throughout his employment, Plaintiff LEUNG TAK CHOI was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff TERRY WONG

255. From on or about March 25, 2012 to June 04, 2017, Plaintiff TERRY WONG was employed by Defendants to work as a Waiter at 155 E 55th St, New York, NY 10022.

256. From on or about March 25, 2012 to June 04, 2017, Plaintiff TERRY WONG's regular work schedule ran depending on whether that week's shift was an "Early shift" or "Late shift":

    a. *Early shift (alternating weeks)—*

        i. 11:30 to 15:45 and then again from 17:45 to 21:45 for eight (8) hours and fifteen (15) minutes for five days a week every other week for a total of forty-one (41) hours and fifteen (15) minutes.

    b. *Late Shift (alternating weeks)—*

        i. 15:45 to 23:00 on Monday, Tuesday, Friday, Saturday and Sunday for seven (7) hours and fifteen (15) minutes and thirty six point two five (36.25) hours each week.

257. At all relevant times, Plaintiff TERRY WONG did not have a fixed time for

lunch or for dinner.

258. From March 25, 2012 to June 27, 2015, Plaintiff TERRY WONG occasionally needed to work until even 01:00 (the next day) to take care of the last customers until they leave.

259. From on or about March 25, 2012 to December 31, 2015, Plaintiff TERRY WONG was paid a flat compensation at a rate of five dollars ($5.00) per hour.

260. From on or about January 01, 2016 to June 04, 2017 , Plaintiff TERRY WONG was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

261. At all relevant times, Plaintiff TERRY WONG was not paid overtime pay for overtime work.

262. At all relevant times, Plaintiff TERRY WONG was never informed of his hourly pay rate or any tip deductions toward the minimum wage.

263. Further, at all relevant times, Plaintiff TERRY WONG had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

264. Further, at all relevant times, Plaintiff TERRY WONG had his tips misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

265. At all relevant times, Plaintiff TERRY WONG's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

266. Throughout his employment, Plaintiff TERRY WONG was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay,

any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

267. Throughout his employment, Plaintiff TERRY WONG was not compensated at least at one-and-one-half his promised hourly wage for all hours worked above forty (40) in each workweek.

268. Throughout his employment, Plaintiff TERRY WONG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff BILLY QIN

269. From on or about March 23, 2013 to June 2015 and again from May 2016 to ?????, Plaintiff BILLY QIN was employed by Defendants to work as a Waiter Captian at 155 E 55th St, New York, NY 10022.

270. From on or about March 23, 2013 to ??? , Plaintiff BILLY QIN's regular work schedule ran depending on whether that week's shift was an "Early shift" or "Late shift":

    a. *Early shift (alternating weeks)—*

        i. 11:45 to 15:45, and then again from 17:45 to 21:45 for eight (8) hours on Monday, Thursday, Friday, Saturday and Sunday for five (5) days and a total of forty (40) hours a week

    b. *Late Shift (alternating weeks)—*

        i. 12:00 to 16:00 and then from 18:00 to 22:00 for eight (8) hours on Monday, Thursday, Friday, Saturday, and Sunday for five

(5) days and (40) hours a week.

271.    At all relevant times, occasionally BILLY QIN occasionally needed to work until even 01:00 (the next day) to take care of the last customers until they leave.

272.    At all relevant times, Plaintiff BILLY QIN did not have a fixed time for lunch or for dinner.

273.    From on or about March 23, 2014 to April 30, 2015, Plaintiff BILLY QIN was paid a flat compensation at a rate of five dollars ($5.00) per hour.

274.    From on or about May 01, 2016 to , Plaintiff BILLY QIN was paid a flat compensation at a rate of eight dollars ($7.50) per hour.

275.    At all relevant times, Plaintiff BILLY QIN was not paid overtime pay for overtime work.

276.    Further, at all relevant times, Plaintiff BILLY QIN had to peel four-season beans, snow peas, bean sprouts, and pack wanton for restocking for more than two (2) hours each workday.

277.    Further, at all relevant times, Plaintiff BILLY QIN had his tips misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

278.    At all relevant times, Plaintiff BILLY QIN's non-tipped work exceeds two (2) hours or twenty percent (20%) of Plaintiff's workday.

279.    Throughout his employment, Plaintiff BILLY QIN was not given a statement with his weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and

the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

280.  Throughout his employment, Plaintiff BILLY QIN was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at his promised rate.

### Plaintiff MONALIZA WONG

281.  From on or about October 12, 1997 to the present day, Plaintiff MONALIZA WONG was employed by Defendants to work as a Waitress at 155 E 55th St, New York, NY 10022.

282.  During the first work period from on or about October 12, 1997, for a period of many years, Plaintiff MONALIZA WONG's regular work schedule ran depending on whether that week's shift was an "Early shift" or "Late shift":

    a.  *Early shift (alternating weeks)—*

        i.  11:45 to 22:00 with an hour break, for nine point two five (9.25) hours, five to six days per week and fifty point eight seven five (50.875) hours a week

    b.  *Late Shift (alternating weeks)—*

        i.  16:00 to 23:30 for seven point five (7.5) hours, five (5) to six (6) days, and forty one point two five (41.25) hours per week.

283.  Subsequently, Plaintiff MONALIZA WONG's regular work schedule ran depending on whether that week's shift was an "Early shift" or "Late shift":

    a.  *Early shift (alternating weeks)—*

        i.  11:45 to 15:45 and then again from 17:45 to 21:45 for eight (8)

hours on Tuesday, Wednesday, Thusday, Saturday and thirty
two (32) hours a week

    b. ***Late Shift (alternating weeks)—***

        i.  16:00 to 23:30 for seven point five (7.5) hours (with no break at
all) on Tuesday, Wednesday, Thusday, Saturday and thirty (30)
hours a week.

284.  From on or about January 01, 2011 to December 31, 2015, Plaintiff
MONALIZA WONG was paid a flat compensation at a rate of five dollars
($5.00) per hour.

285.  From on or about January 01, 2016 to December 31, 2017 , Plaintiff
MONALIZA WONG was paid a flat compensation at a rate of eight dollars
($7.50) per hour.

286.  From on or about January 01, 2018 to December 31, 2018, Plaintiff
MONALIZA WONG was paid a flat compensation at a rate of nine dollars
($8.65) per hour.

287.  From on or about January 01, 2019 to the present day, Plaintiff MONALIZA
WONG was paid a flat compensation at a rate of ten dollars ($10.00) per hour.

288.  At all relevant times, Plaintiff MONALIZA WONG was not paid overtime pay
for overtime work.

289.  Further, at all relevant times, Plaintiff MONALIZA WONG had to peel four-
season beans, snow peas, bean sprouts, and pack wanton for restocking for about
one (1) hours each workday.

290.  Further, at all relevant times, Plaintiff MONALIZA WONG had his tips

misappropriated by sharing tips with the non tipped employees for three (3) dollars each person and bartender for forty (40) dollars.

291.   Throughout her employment, Plaintiff MONALIZA WONG was not given a statement with her weekly payment reflecting employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day in Chinese, Plaintiff's native language.

292.   Throughout her employment, Plaintiff MONALIZA WONG was not compensated at least at one-and-one-half her promised hourly wage for all hours worked above forty (40) in each workweek.

293.   Throughout her employment, Plaintiff MONALIZA WONG was not compensated for New York's "spread of hours" premium for shifts that lasted longer than ten (10) hours at her promised rate.

## COLLECTIVE ACTION ALLEGATIONS

294.   Plaintiffs bring this action individually and as class representative individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants for up to the last three (3) years, through entry of judgment in this case (the "Collective Action Period") and whom were not compensated at least the hourly minimum wage and/or overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members").

# CLASS ACTION ALLEGATIONS

295.   Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt personnel employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

296.   All said persons, including Plaintiffs, are referred to herein as the "Class."

297.   The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said F.R.C.P 23.

*Numerosity*

298.   The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

*Commonality*

299.   There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

      a.   Whether Defendant employed Plaintiffs and the Class within the

meaning of the New York law;

b.   Whether Plaintiffs and Class members are paid at least the minimum wage for each hour worked under the New York Labor Law;

c.   Whether Plaintiffs and Class members are entitled to and paid overtime under the New York Labor Law;

d.   Whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread-of-hours pay as required by the NYLL;

e.   Whether Defendants maintained policy, pattern and/or practice of failing to provide requisite statutory meal periods;

f.   Whether Defendants provided a Time of Hire Notice detailing rates of pay and payday at the start of Plaintiffs and the Rule 23 Class's start of employment and/or or timely thereafter;

g.   Whether Defendants provided paystubs detailing the rates of pay and credits taken towards the minimum wage to Plaintiffs and the Rule 23 class on each payday; and

h.   At what common rate, or rates subject to common method of calculation was and is Defendants required to pay Plaintiffs and the Class members for their work.

## *Typicality*

300.   Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were

subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage compensation and/or overtime compensation. Defendants' corporate wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

### Adequacy

301.   Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class.  Plaintiffs are represented by attorneys who are experienced and competent representing Plaintiffs in both class action and wage and hour employment litigation cases.

### Superiority

302.   A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class

members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

303. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

## STATEMENT OF CLAIMS

### COUNT I.
### [Violations of the Fair Labor Standards Act—Minimum Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

304. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

305. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiff, and the similarly situated collective action members, for some or all of the hours they worked.

306. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

307. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiff and Collective Action members.


## COUNT II.
### [Violation of New York Labor Law—Minimum Wage
### Brought on Behalf of Plaintiff and Potential Rule 23 Class]

308. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

309. At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

310. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

311. Defendants knowingly and willfully violated Plaintiffs' and similarly situated Class Members' rights by failing to pay him minimum wages in the lawful amount

for hours worked.

312.   An employer who fails to pay the minimum wage shall be liable, in addition to the
amount of any underpayments, for liquidated damages equal to twenty five percent
(25%) of the shortfall under NYLL §§190 *et seq.*, §§650 *et seq.*, and one hundred
percent (100%) after April 9, 2011 under NY Wage Theft Prevention Act, and
interest.


## COUNT III.
### [Violations of the Fair Labor Standards Act—Overtime Wage
### Brought on behalf of the Plaintiff and the FLSA Collective]

313.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as
though fully set forth herein.

314.   The FLSA provides that no employer engaged in commerce shall employ a
covered employee for a work week longer than forty (40) hours unless such
employee receives compensation for employment in excess of forty (40) hours at a
rate not less than one and one-half times the regular rate at which he or she is
employed, or one and one-half times the minimum wage, whichever is greater. 29
USC §207(a).

315.   The FLSA provides that any employer who violates the provisions of 29 U.S.C.
§207 shall be liable to the employees affected in the amount of their unpaid overtime
compensation, and in an additional equal amount as liquidated damages. 29 USC
§216(b).

316.   Defendants' failure to pay Plaintiffs and the FLSA Collective their overtime pay
violated the FLSA.

317.    At all relevant times, Defendants had, and continue to have, a policy of practice of refusing to pay overtime compensation at the statutory rate of time and a half to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, *et seq.*, including 29 U.S.C. §§207(a)(1) and 215(a).

318.    The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

319.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

320.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and Collective Class Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.


**COUNT IV.**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiff and Potential Rule 23 Class]**

321.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

322.    An employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to twenty five percent

(25%) before April 9, 2011 and one hundred percent (100%) under NY Wage Theft Prevention Act, and interest.

323.  At all relevant times, Defendants had a policy and practice of refusing to pay the overtime compensation to Plaintiffs at one and one half times the hourly rate the Plaintiffs and the class are entitled to.

324.  Defendant' failure to pay Plaintiffs their overtime pay violated the NYLL.

325.  Defendants' failure to pay Plaintiffs were not in good faith.

## COUNT V.
### [Violation of New York Labor Law—Spread of Time Pay Brought on behalf of Plaintiff]

326.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

327.  The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, *et seq.*, and §§650, *et seq.*, and New York State Department of Labor regulations §146-1.6.

328.  Defendants' failure to pay Plaintiff spread-of-hours pay was not in good faith.

## COUNT VI.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Bicycle/ Electric Delivery Vehicle, including Depreciation, Insurance, Maintenance and Repairs]

329.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

330.  Throughout the relevant period, Defendants required their deliverymen to bear all of the "out-of-pocket" costs associated with their vehicles, including the purchase, maintenance, repair, maintenance of the delivery vehicles, including Plaintiff's

bicycles, including electric and gas bicycles.

331.  Based on their personal experience and available information, Plaintiffs can document actual "out-of-pocket" vehicle related expenses of their personal bicycles that were used for deliveries made under employment under Defendants.

332.  The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiffs to maintain the delivery vehicle in working condition.

333.  Plaintiffs maintained and repaired their motor vehicle at their own expense.

334.  Plaintiffs performed these deliveries for the sole benefit of the Defendants.

335.  Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of replacement bicycles, replacement batteries and/or other regular maintenance of the vehicles.

336.  As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiffs would incur the expenses for vehicle maintenance, in exchange for compensation from Defendants for such expenses.

337.  Defendants have not fully compensated Plaintiffs for expenses incurred from maintenance of the vehicle and the purchase of gas.  As a result, Defendants breached the implied contract by failing and refusing to pay Plaintiffs a reasonable sum under the afore-alleged facts.

338.  Defendants owe Plaintiffs their overdue costs incurred from delivery vehicles.

## COUNT VII.
### [Breach of Implied Contract for Reimbursement of all Costs and Expenses of Motor Vehicle, including Depreciation, Insurance, Maintenance and Repairs]

339.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

340.   Throughout the relevant period, Defendants required Plaintiff CHENG XIA WANG to bear all of the "out-of-pocket" costs associated with his delivery vehicle, including the purchase, maintenance, repair, maintenance of a delivery motor vehicle and/or an electricity bicycle.

341.   Based on his personal experience and available information, Plaintiff can document actual "out-of-pocket" vehicle related expenses of their motor vehicle.

342.   The conduct of Defendants, and the course of Defendant's conduct between the parties, evidenced an intent for Plaintiff to maintain the motor vehicle in working condition.

343.   Plaintiff purchased, maintained and repaired the motor vehicle at his own expense.

344.   Plaintiff performed these deliveries for the sole benefit of the Defendants.

345.   Defendants neither explicitly nor implicitly requested Plaintiffs to cease the purchase of gasoline and/or the car maintenance.

346.   The GSA has published a standard mileage rate used to calculate the costs of operating an automobile for business purposes.

347.   In 2013, the GSA standard mileage rate for the use of a car is 53.5 cents per mile for business miles driven.

348.   In 2014, the GSA standard mileage rate for the use of a car is 53 cents per mile for business miles driven.

349.   In 2015, the GSA standard mileage rate for the use of a car is 54.5 cents per mile

for business miles driven.

350. In 2016, the GSA standard mileage rate for the use of a car is 51 cents per mile for business miles driven.

351. As a result of the afore-alleged conduct of the parties, an implied contract arose between them the terms of which are that Plaintiff would incur the expenses for motor vehicle purchase and maintenance in exchange for compensation from Defendants for such expenses.

352. Defendants owe Plaintiffs their overdue costs of maintaining motor vehicle for Defendants' benefit.

## COUNT VIII.
### [Violation of New York Labor Law—Failure to Provide Meal Periods Brought on behalf of Plaintiff and Potential Rule 23 Class]

353. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

354. The NYLL requires that employees provide: a noon day meal period of at least thirty (30) minutes for employees who work a shift of more than six hours extending over the noon day meal period from 11 a.m. to 2 p.m.; an additional meal period between 5 p.m. and 7 p.m. of at least twenty (20) minutes for employees whose shift started before 11 a.m. and continues later than 7 p.m.; and/or a forty-five (45) minute meal period at a time midway between the beginning and end of the shift for employees whose shift lasts more than six hours and starts between 1 p m. and 6 a.m. NYLL§ 162.

355. Defendants failed to provide meal periods required by NYLL §162 for every day that Plaintiffs work or worked.

356.   Though the Department of Labor commissioner may permit a shorter time to be

fixed for meal periods than hereinbefore provided, such permit must be in writing

and be kept conspicuously posted in the main entrance of the establishment. No such

permit is posted.

357.   Defendants' failure to provide the meal periods required by NYLL §162 was not

in good faith.


## COUNT IX.
### [Violation of New York Labor Law—Record-Keeping Requirements
### Brought on behalf of Plaintiff and Potential Rule 23 Class]

358.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as

though fully set forth herein.

359.   Defendants did not maintain, establish and preserve Plaintiffs' weekly payroll

records for a period of not less than six years, as required by NYRR § 146-2.1.

360.   As a result of Defendants' unlawful conduct, Plaintiffs have sustained damages

including loss of earning, in an amount to be established at trial, liquidated damages,

prejudgment interest, costs and attorneys' fee, pursuant to the state law.

361.   Upon information and belief, Defendants failed to maintain adequate and accurate

written records of actual hours worked and true wages earned by Plaintiffs in order

to facilitate their exploitation of Plaintiffs' labor.

362.   Defendants' failure to maintain adequate and accurate written records of actual

hours worked and true wages earned by Plaintiff were not in good faith.

## COUNT X.
### [Violation of New York Labor Law—Time of Hire Wage Notice Requirement Brought on behalf of Plaintiff and Potential Rule 23 Class]

363. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

364. The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer. NYLL §195-1(a).

365. Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on their or her first day of employment.

366. Defendants not only did not provide notice to each employee at Time of Hire, but failed to provide notice to Plaintiffs even after the fact.

367. Due to Defendants' violations of New York Labor Law, Plaintiff are entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT XI.
### [Violation of New York Labor Law—New York Pay Stub Requirement Brought on behalf of Plaintiff and Potential Rule 23 Class]

368.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

369.   The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

370.   Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

371.   Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-d).


## COUNT XII.
### [Civil damages for fraudulent filing of IRS returns. Violations of 26 USC §7434 Brought on behalf of the Plaintiff]

372.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

373.   26 USC §7434 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

374.   Due to Defendants' violations of 26 USC §7434, Plaintiffs are entitled to recover from Defendants, jointly and severally: (1) any actual damages sustained by the

Plaintiffs as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such a filing), (2) the cost of the action, and (3) in the court's discretion, reasonable attorneys' fees.

## COUNT XIII.
### [Civil damages for Deceptive Acts and Practices. Violations of New York General Business Law §349
### Brought on behalf of the Plaintiff]

375. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

376. New York General Business Law §349 provides that if any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such a return.

377. Due to Defendants' violations of New York GBS Law §349, Plaintiff is entitled to recover from Defendants, jointly and severally, their actual damages or fifty dollars ($50), whichever is greater, or both such actions.

378. Plaintiffs demand the right to examine, in person or by attorney, the minutes of the proceedings of the shareholders and records of shareholders of Defendant Corporation to recover wages owed as employees of the corporation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, and on the behalf of the FLSA Collective Plaintiffs, respectfully requests that this Court enter a judgment providing the

following relief:

a)  Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the Court issue such notice, to all persons who are presently, or have up through the extent allowable under the statute of limitations and including the date of issuance of court-supervised notice, been employed by Defendants as non-exempt employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied premium overtime wages;

b)  Certification of this case as a collective action pursuant to FLSA;

c)  Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

d)  A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

e)  An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

f)   An award of unpaid minimum wage and overtime wages due under FLSA and New York Labor Law due to Plaintiffs and the Collective Action members plus compensatory and liquidated damages in the amount of twenty five percent (25%) prior to April 9, 2011 and one hundred percent (100%) thereafter under NY Wage Theft Prevention Act;

g)   An award of liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay wages at least the hourly minimum wage, overtime compensation pursuant to 29 U.S.C. §216;

h)   Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a Time of Hire Notice detailing rates of pay and payday;

i)   Up to five thousand dollars ($5,000) per Plaintiff for Defendants' failure to provide a paystub that lists employee's name, employer's name, employer's address and telephone number, employee's rate or rates of pay, any deductions made from employee's wages, any allowances claimed as part of the minimum wage, and the employee's gross and net wages for each pay day;

j)   An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to overtime compensation, and "spread of hours" premium pursuant to New York Labor Law;

k)   An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

l)   The cost and disbursements of this action;

m)   An award of prejudgment and post-judgment fees;

n)      Providing that if any amounts remain unpaid upon the expiration of ninety

days following the issuance of judgment, or ninety days after expiration of the

time to appeal and no appeal is then pending, whichever is later, the total

amount of judgment shall automatically increase by fifteen percent, as required

by NYLL §198(4); and

o)      Such other and further legal and equitable relief as this Court deems necessary,

just, and proper.

Dated: Flushing, New York
July 22, 2019

TROY LAW, PLLC
*Attorneys for the Plaintiffs, the*
*proposed FLSA Collective, and*
*potential Rule 23 Class*

  /s/ John Troy
John Troy (JT0481)
41-25 Kissena Boulevard Suite 119
Flushing, NY 11355
Tel: (718) 762-1324
Email: johntroy@troypllc.com