UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
                                                       :

CHENG XIA WANG et al.,                :

                                            :

                        Plaintiffs,    :

                                            :              17-CV-840 (VSB)

            - against -             :

                                            :        **OPINION & ORDER**

                                          :

SHUN LEE PALACE RESTAURANT, INC.  :
D/B/A SHUN LEE PALACE, et al.,       :

                                          :

                        Defendants.  :

                                          :
---------------------------------------------------------X

<u>Appearances</u>:

Aaron B. Schweitzer, Tiffany Troy, Jian Hang, John Troy
Troy Law, PLLC
Flushing, New York

Jian Hang, Jiajing Fan
Hang & Associates, PLLC
Flushing, New York
*Counsels for Plaintiffs*

A Michael Weber, Eli Zev Freedberg, Huan Xiong, Kevin K. Yam, Maayan Deker
Littler Mendelson, P.C.
New York, New York
*Counsels for Defendants*

<u>VERNON S. BRODERICK, United States District Judge</u>:

       Five Plaintiffs in this case substituted their law firm, Troy Law, PLLC ("Troy Law"),

with Hang & Associates, PLLC ("Hang & Associates").  Now before me are two motions for

attorneys' charging liens filed by Troy Law seeking to recover their attorneys' fees from these

Plaintiffs' settlement proceeds.  After reviewing the record, I find that Troy Law has waived its

entitlement to enforce the charging lien against certain Plaintiffs, and that its asserted lien

amount is excessive as to the remaining Plaintiffs.  The motion is therefore DENIED in part and GRANTED in part.

## I.     Factual and Procedural Background

On July 10, 2019, five Plaintiffs—Cheng Xia Wang, Jun Qing Zhao, Ze Jun Zhang, Chunlin Zhang and Bao Guo Zhang—each filed a motion to substitute their attorney.  (Docs. 109–115.)  In affidavits they filed in support of the motions, the five Plaintiffs stated that they were "not satisfied with the legal service [Troy Law] provides[, and t]herefore . . . retained [Hang & Associates] to replace Troy Law[.]"  (*See, e.g.* Zhao Aff. ¶ 3.)[1]  Troy Law filed its opposition to the motions to substitute attorneys on July 19, 2019.  (Doc. 118.)  I granted the five substitution motions on July 26, 2019.  (Doc. 128.)

On August 3, 2020, Plaintiffs notified me through a letter that they had reached an agreement in principle with Defendants to settle the New York Labor Law ("NYLL") claims of Chunlin Zhang and Bao Guo Zhang (thereafter, the "NYLL Plaintiffs").  (Doc. 192.)  On September 6, 2020, Troy Law filed an opposition to the NYLL Plaintiffs' settlement and requested that I review the settlement.  (Doc. 199.)  After I denied Troy Law's request, (Doc. 201), Troy Law filed a motion for reconsideration, (Doc. 202), and Hang & Associates subsequently filed a cross motion for sanctions against Troy Law on October 12, 2020, (Doc. 205).

On February 16, 2021, I issued an Opinion & Order which, among other things, denied Troy Law's motion for reconsideration and ordered Troy Law to show cause why it should not be sanctioned.  *See Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17-CV-00840 (VSB), 2021 WL 634717, at *17–19 (S.D.N.Y. Feb. 16, 2021).  Troy Law failed to show cause pursuant

---

[1] "Zhao Aff." refers to the Affidavit of Jun Qing Zhao in support of his motion to substitute attorney.  (Doc. 111.)

to my order, and I granted the motion for sanctions on June 11, 2021.  (Doc. 229.)

On March 25, 2021, Troy Law filed a motion for an attorneys' charging lien on the claims of Cheng Xia Wang, Jun Qing Zhao, and Ze Jun Zhang.  (Doc. 216.)  On April 8, 2021, these three Plaintiffs, who had become represented by Hang & Associates, filed their opposition to Troy Law's motion.  (Doc. 221 ("Hang Mem.").)  Subsequently, Cheng Xia Wang, Jun Qing Zhao, and Ze Jun Zhang (thereafter, the "*Cheeks* Plaintiffs") settled their claims with Defendants and filed their settlement agreement on August 6, 2021 along with a letter requesting that I approve their settlement under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).  (Doc. 238.)

On August 26, 2021, Troy Law filed a motion for an attorneys' charging lien on the NYLL Plaintiffs' settlement proceeds.  (Doc. 246.)  On September 9, 2021, Hang & Associates filed its objection to Troy Law's motion.  (Doc. 251.)  On September 13, 2021, Defendants filed a letter explaining their position concerning Troy Law's motions.  (Doc. 252.)  Although Defendants do not oppose the enforcement of charging lien against the *Cheeks* Plaintiffs, they argue that Troy Law has waived the charging lien against the NYLL Plaintiffs; Defendants further note that Troy Law's requested fees with respect to the five Plaintiffs are excessive.  (*See id*. at 4-8.)  Defendants also request that, in the event I grant either charging lien motion, they should not be required to contribute additional funds to the settlement.  (*See id*. 4–5.)  On September 20, 2021, Troy Law filed its reply to the oppositions of Hang & Associates and Defendants.  (Doc. 253 ("Reply").)

On May 10, 2022, I held an evidentiary hearing to determine whether Troy Law was terminated for cause.  On that day, Plaintiff Chen Xia Wang and Jun Qing Zhao testified.  (*See*

Trans. I 4:7 and 43:16.)[2]  A second session of the hearing was held on May 31, 2022, during which Plaintiff Ze Jun Zhang testified, and Plaintiff Guoyi Wang testified on behalf of Troy Law.  (*See* Trans. II 81:12 and 113:5.)[3]

### II.    Discussion

#### A.  *Applicable Laws*

New York Judiciary Law Section 475 codified the common law doctrine of attorneys' charging liens.  *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 449 (2d Cir. 1998).  The charging liens under Section 475 are "enforceable in federal courts in accordance with its interpretation by New York Courts."  *Id.* (internal quotation marks omitted). The statue "allows attorneys to assert a charging lien, enforceable against the recovery of former clients, as a means of securing compensation for services that produced that recovery."  *Barros v. AMTRAK*, NO. 18 Civ. 3394 (VSB) (SLC), 2020 WL 6581184, at *10–11 (S.D.N.Y. Nov. 10, 2020).  It provides that

> [f]rom the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, . . . the attorney who appears for a party has a lien upon his or her client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, award, settlement, judgment or final order in his or her client's favor, and the proceeds thereof in whatever hands they may come. . . . The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. Law § 475.  As the statute made clear, the charging lien attaches only "from the commencement of an action."  *See Stair v. Calhoun*, 722 F. Supp. 2d 258, 270 (E.D.N.Y. 2010) ("[T]he lien should be fixed to account for services rendered beginning at the time of the action's commencement and not at the time that the firm was retained."); *Winkfield v. Kirschenbaum &*

---

[2] "Trans. I" refers to the transcript for the evidentiary hearing held on May 10, 2022.  (Doc. 317.)

[3] "Trans. II" refers to the transcript for the evidentiary hearing held on May 31, 2022.  (Doc. 319.)

*Philips, P.C.*, No. 12 Civ. 7424(JMF), 2013 WL 371673, at *3 (in determining the reasonable value of the charging lien, disregarding fees for services rendered prior to the date the complaint was filed).

Although "[a]n attorney's permitted withdrawal from representation of a party does not affect his entitlement to the statutory lien under Section 475," *Perez v. Progenics Pharms., Inc.*, 204 F. Supp. 3d 528, 553 (S.D.N.Y. 2016) (internal quotation marks omitted), the attorney will lose the right to enforce the charging lien if she "withdraws or is discharged for cause," *Antonmarchi v. Consol. Edison Co.*, 678 F. Supp. 2d 235, 241 (S.D.N.Y. 2010) (internal quotation marks omitted). "Courts typically find a discharge 'for cause' where there has been a significant breach of legal duty[, and a] client must show that his former attorney's conduct constituted a failure to properly represent his interests." *Id.* (internal quotation marks omitted). Although a client need not plead malpractice to show "for cause" discharge, *see D'Jamoos v. Griffith*, No. 00-CV-1361 (ILG), 2006 WL 2086033, at *4 (E.D.N.Y. July 25, 2006), "discharge on account of personality conflicts, misunderstandings or differences of opinion having nothing to do with any impropriety by the lawyer, does not amount to discharge 'for cause.'" *Ruiz v. KeratinBar Inc.*, No. 17-CV-2216 (VEC), 2020 WL 7079904, at *4 (S.D.N.Y. Dec. 3, 2020) (citation omitted).

"Absent an express agreement between the attorney and client to the contrary, a discharged attorney may recover the fair and reasonable value of the services rendered . . . computed on the basis of *quantum meruit*." *Stair*, 722 F. Supp.2d at 268. "The party seeking attorney's fees . . . bears the burden of establishing that the number of hours for which compensation is sought is reasonable." *Custodio v. Am. Chain Link & Const., Inc.*, No. 06 Civ. 7148(GBD)(HBP), 2014 WL 116147, at *9 (S.D.N.Y. Jan. 13, 2014). "[T]he determination of

the reasonable value of the attorney's services 'is a matter within the sound discretion of the trial

court.'" *Sequa Corp. v. Gbj Corp.*, 156 F.3d 136, 149 (2d Cir. 1998) (quoting *Chernofsky &

DeNoyelles v. Waldman*, 622 N.Y.S.2d 560, 566 (2d Dep't 1995). "[H]ours that are excessive,

redundant, or vague are to be excluded, 'and in dealing with such surplusage, the court has

discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical

means of trimming fat from a fee application.'" *Pettiford v. City of Yonkers*, 14 Civ. 6271

(JCM), 2020 WL 1331918, at *6 (S.D.N.Y. Mar. 20, 2020) (quoting *Kirsch v. Fleet Street, Ltd.*,

148 F.3d 149, 173 (2d Cir. 1998)); *see also id.* at *8 (applying a 55% across-the-board reduction

to the requested amount of attorneys' charging lien).

Lastly, "the right to enforce a Section 475 lien will be waived by any action inconsistent

with an intent to enforce the lien." *Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 CIV 9679

(NSR), 2021 WL 5745718, at *5 (S.D.N.Y. Dec. 2, 2021) (quoting *Petition of Harley & Browne*,

957 F. Supp. 44, 49 (S.D.N.Y. 1997)). "This 'waiver rule is intended to prevent other parties

from being misled by an attorney's actions or inaction.'" *Id.* (quoting *Kaplan v. Reuss*, 495

N.Y.S.2d 404, 407 (2d Dep't 1984)). The charging lien will be deemed waived "if the attorney

knowingly allows the proceeds to pass into the hands of the client or another party without

asserting his or her rights, or if the attorney fails to enforce the lien within a reasonable time."

*Id.* (quoting *Kaplan*, 495 N.Y.S.2d at 407).

### B. *Application*

#### 1. **The NYLL Plaintiffs**

The parties informed me of the NYLL Plaintiffs' settlement in a letter filed on August 3,

2020. (*See* Doc. 192.) Troy Law was or should have been aware of this settlement immediately

upon the filing of the letter, if not before, and it filed an objection to the settlement shortly

afterwards on September 6, 2020.  (*See* Doc. 199.)  However, Troy Law waited until August 26,

2021—over one year after it became aware of the settlement—to file the instant motion for a

charging lien.  (Doc. 246.)  Troy Law tries to justify this delay by arguing that "[n]o report of

settlement funds disbursement has been made."  (Reply 5.)  Citing to *Harley & Browne*, 957 F.

Supp. at 44, and *Kaplan*, 495 N.Y.S.2d at 404, Troy Law contends that "[a] motion to enforce

the lien is timely" as long as "the exchange contemplated by the settlement agreement has not yet

taken place."  (*Id*. at 6.)  However, the cases cited by Troy Law do not support this assertion

since the courts never ruled that the timeliness of the motion depends on the disbursement of

funds.  Indeed, both *Harley & Browne* and *Kaplan* make clear that the right to enforce a lien will

be waived if the attorney "fails to enforce the lien within a reasonable time."  *Harley & Browne*,

957 F. Supp. at 49; *Kaplan*, 495 N.Y.S.2d at 407.  In fact, the right to enforce the lien can be

waived even if the attorney asserts the lien before the settlement proceeds are disbursed.  *See*

*Avaras*, 2021 WL 5745718, at *6 (finding the lien waived with an eight-month delay even

though the attorney asserted the lien before the disbursement of settlement proceeds, and

disagreeing that *Harley & Browne* or *Kaplan* would compel a different result because

"*Kaplan* makes clear that waiver may occur . . . if the attorney fails to enforce the lien *within a*

*reasonable time*" (emphasis in original)).

   Troy Law also argues that until my denial of their motion for reconsideration—a motion I

have found to warrant sanctions, (*see* Doc. 209 at 37–39)—they "were not sure whether the

settlement would be upheld or not."  (Reply 6.)  However, Troy Law cannot be allowed to create

more time for itself to enforce the charging lien simply by filing motions, unless the law would

impose something akin to a stay.  Troy Law asserted the lien against the NYLL Plaintiffs five

months after it had asserted the lien against the *Cheeks* Plaintiffs, six months after my denial of

their motion for reconsideration, and over one year after they became aware of the settlement.

Such delay is too long to be reasonable under the circumstances; it might have misled the

existing parties about the attorney's intention, and "intervention at this late stage would prejudice

[them] by destroying their [s]ettlement and sending them back to the drawing board," *In re*

*Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000); *see also Avaras* 2021 WL

5745718, at *6 ("The Second Circuit has generally held that an eight- to eighteenth-month delay

in an attorney's request to intervene after the applicant knew or should have known of an interest

is untimely.") (collecting cases).

Accordingly, Troy Law has waived its entitlement to enforce the charging lien as to the

NYLL Plaintiffs, and I deny their motion.

### 2. The *Cheeks* Plaintiffs

The *Cheeks* Plaintiffs asserts that Troy Law is not entitled to charging lien because they

terminated Troy Law's representation "for cause."  (*See* Hang Mem. 9–10.)  They point to the

affidavits filed in support of their motions to substitute their attorney, in which they each stated

that they were "not satisfied with the legal service" provided by Troy Law.  (*See, e.g.* Zhao Aff.

¶ 3.)  During the hearing, the *Cheeks* Plaintiffs each testified that they were not satisfied with

Troy Law's representation because Troy Law failed to provide them with updates on the status

of the case and had a "poor attitude," i.e., Troy Law was not responsive to their inquiries.  (*See*

Transcript I 6:3 (mentioning "poor attitude"), 15:13-24 ("[E]very time we make inquiries, we

never get an answer."); 49:6-9 ("[W]e went . . . to inquire about the progress of our case, but Mr.

Troy was very tough with his language, so it was not a happy situation and we were not

happy."); Trans. II 82:18-20 ("[T]here was very little communication for those two years [of

representation] between attorney Troy and us.").)  Such evidence is not sufficient to show

termination for cause.  Although New York law does not explicitly define the term "for cause,"
courts have found termination for cause where "the attorney has engaged in some kind of
misconduct, has been unreasonably lax in pursuing the client's case, or has otherwise improperly
handled the case." *Garcia v. Teitler*, No. 04-CV-832 (JG), 2004 WL 1636982, at *5 (E.D.N.Y.
2004) (collecting cases), *aff'd*, 443 F.3d 202 (2d Cir. 2006).   "Poor client relations, differences
of opinion, or personality conflicts do not amount to cause." *Garcia*, 443 F.3d at 212.  Here,
although the frequency and clarity of Troy Law's communication with the five Plaintiffs prior to
the termination was not entirely ideal, there is no evidence demonstrating that Troy Law violated
any professional rules or was "unreasonably lax" in pursuing the case.[4]  Although I later
sanctioned Troy Law, both the sanction and Troy Law's conduct that led to the sanction took
place after the termination and do not affect its entitlement to enforce the charging lien.

Because Troy Law was not terminated by the *Cheeks* Plaintiffs for cause, it is entitled to
enforce the charging lien against them.  Nevertheless, I find that the amount of charging lien
asserted by Troy Law is excessive.

First, the charging lien only attaches upon commencement of the action, which, in this
case, was February 3, 2017.  (*See* Doc. 1.)  The record, however, includes billing entries dated
before February 3, 2017, (*see* Billing Record 1–2);[5] these entries cannot be included as part of
the computation of the charging lien.  *See Winkfield*, 2013 WL 371673, at *3.  Second, almost all
of the entries after June 12, 2019 involve work related to the five Plaintiffs' motions to substitute
their attorney.  (*See* Billing Record 11–12.)  The work relevant to these entries was created by

---

[4] Specifically, there is no evidence suggesting that Troy Law failed to communicate any settlement offer to the five
Plaintiffs.  Defendants confirmed during the hearing that there was no settlement offer extended prior to Troy Law's
termination.  (Trans. II 141:25-142:3.)

[5] "Billing Record" refers to the billing record submitted by Troy Law in support of its motion for attorneys' charging
lien against the *Cheeks* Plaintiffs.  (Doc. 216-2.)

Troy Law's own decision to oppose its former clients' motions; in other words, it was not "in furtherance of obtaining a favorable judgment on behalf of [Plaintiffs] and . . . thus not properly the subject of the charging lien." *Stair*, 722 F. Supp. 2d at 271; *see also Pettiford*, 2020 WL 1331918, at *7 (excluding time billed for the attorney to prepare motion to withdraw as counsel from the computation of charging lien). Third, although Troy Law was representing twenty-three Plaintiffs at the time, the charging lien it is seeking to attach only relates to the three *Cheeks* Plaintiffs; the Billing Record, however, covers work done for all of twenty-three Plaintiffs. The entries show time billed for "Finaliz[ing] the Complaint" or "review[ing] email[s]," without specifying the portion that was specifically dedicated to the work related to the *Cheeks* Plaintiffs, and without providing an explanation why the total amount sought is reasonable for the three *Cheeks* Plaintiffs. (Billing Record 2–3.) Fourth, certain entries are vague and the hours billed are unreasonable. For example, John Troy, the partner of Troy Law who purportedly billed at $550 an hour, spent one hour reviewing my Individual Rules and the Individual Rules of Magistrate Judge Debra C. Freeman.[6] (*Id.*) It is not clear why John Troy—the highest billing attorney—would be the appropriate person to review the Individual Rules. Shuyang Xie, an associate at Troy Law purportedly billed at $250 at hour, also spent over eleven hours "scan[ning] paystubs." (*Id.* 8–9.) This work does not appear to have needed someone with a law degree, and nothing in Troy Law's papers militates against this finding. Entries like "Reviewing Defendants' Comment," "Revise and Review Documents," and "Download, Review, Data Entry and Calendar" are so vague that I cannot determine their reasonableness, let alone that they apply to the *Cheeks* Plaintiffs. (*Id.* 7, 8, and 9); *see Pettiford*, 2020 WL 1331918, at *7 (disregarding entries like "review additional docs" and "drafting demands" as overly

---

[6] Although Judge Freeman was the designated Magistrate Judge, this case was never referred to her for any purpose.

vague).  Fifth, although Troy Law asserted an amount of $63,379.70 "on a quantum merit basis," (Troy Decl. ¶ 8),[7] it is unclear how it reached this number as the billing records it submits do not contain a total sum or any form of computation.  (*See* Billing Record 20.)  Sixth, Troy Law lists a number of attorneys and staff members that worked on this case, and asserts an hourly rate of $550 for John Troy, $350 for Senior Associates George Byun, Aaron Schweitzer, and Kenneth Willard, from $150 to $300 for Junior Associates, and from $100 to $150 for clerks and paralegals.  (*See generally* Billing Record; *see also* Doc. 247 at 29.)[8]  In other cases where Troy Law proposed the same or similar rates, courts have routinely found that "these individuals are not entitled to compensation at the hourly rates they proposed."  *De Los Santos v. Hat Trick Pizza, Inc.*, 16-cv-6274 (AJN), 2021 WL 4150967, at *2 (S.D.N.Y. Sep. 13, 2021) (collecting cases) (determining as reasonable an hourly rate of $400 for John Troy, $160 for George Byun, and $150 for Adam Schweitzer, among others).  For the reasons that have been thoroughly explained by many of my colleagues, *see id.*, I find that the hourly rates that Troy Law proposes for its legal team are excessive.

Given the number of attorneys and staff members that have appeared on the Billing Record and the vagueness of those entries, I do not make individual findings as to the reasonable hourly rates for each person or the reasonable hours for each task.  Instead, I believe that an across-the-board deduction of 70% is appropriate, and find that an amount of 30% × $63,379.70 = $19,013.91 to be reasonable attorneys' fees for Troy Law.

However, my analysis does not end with my determination that an across-the-board

---

[7] "Troy Decl." refers to the declaration of John Troy in support of Troy Law's motion for attorneys' charging lien. (Doc. 216-1.)

[8] Troy Law did not provide the attorneys' credentials in connection with their motion as to the *Cheeks* Plaintiffs. They filed it previously in connection with their motion as to the NYLL Plaintiffs.  (*See* Doc. 247.)

reduction is appropriate.  In a separate Opinion & Order, I have approved the *Cheeks* Plaintiffs' settlement of $107,250.00 and determined an award of attorneys' fees in the amount of $35,750.00 to be fair and reasonable.  (Settlement O&O 7–8.)[9]  This amount represents one third of the settlement award.  For the settlement amount to be fair to the *Cheeks* Plaintiffs, the total award of attorneys' fees for Troy Law and Hang & Associates cannot exceed $35,750.00.  To determine a fair ratio for Troy Law and Hang & Associates to spilt the award for attorneys' fees, I must compare the reasonable fees of the two firms.  The billing records submitted by Hang & Associates shows a total charge of $51,457.50.  (Invoice 28.)[10]  Although I have determined that the hourly rates charged by Hang & Associates are reasonable, certain hours billed do not reflect the work done solely for the *Cheeks* Plaintiffs.  (*See* Settlement O&O 8 n.4.)  There are also a number of entries that are too vague to be included.  (*See generally* Invoice (repeated entries of "Review court filing" and "Review court order").)  Therefore, I apply a 20% across-the-board deduction and determine the reasonable attorneys' fees for Hang & Associates to be 80% × $51,457.50 = $41,166.00.

I find it fair to require Troy Law and Hang & Associates to spilt the total award of attorneys' fees based on the ratio of their respective reasonable attorneys' fees.  Troy Law is entitled to $35,750.00 × [$19,013.91 ÷ ($19,013.91 + $41,166.00)] = $11,295.25, and Hang & Associates is entitled to $35,750.00 × [$41,166.00 ÷ ($19,013.91 + $41,166.00)] = $24,454.75.

### III.   <u>Conclusion</u>

For reasons above, Troy Law's motions for attorneys' charging lien is DENIED in part

---

[9] "Settlement O&O" refers to my Opinion & Order approving the *Cheeks* Plaintiffs' settlement filed simultaneously with this Opinion & Order.

[10] "Invoice" refers to the billing records submitted by Hang & Associates in support of the *Cheeks* Plaintiffs' motion for settlement approval.  (Doc. 238-2.)

and GRANTED in part.  Defendants shall make payment from the *Cheeks* Plaintiffs' settlement

proceeds to Troy Law in the amount of $11,295.25, and to Hang & Associates in the amount of

$24,454.75.[11]

SO ORDERED.

Dated: July 13, 2022
        New York, New York

                                        Vernon S. Broderick
                                        United States District Judge

---

[11] This is a deviation from the method of disbursement contemplated by the settlement agreement.  The parties shall inform me within two weeks of the filing of this Opinion & Order whether my suggested method of disbursement presents any issues.