UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
                                   :

CHUNLIN ZHANG, *et al.*,            :

                                   :

                    Plaintiffs,    :

                                   :          17-CV-840 (VSB) (VF)

            - against -          :

                                   :         **OPINION & ORDER**

MICHAEL TONG, *et al.*,           :

                                   :

                    Defendants.   :

                                   :
---------------------------------------------------------------X

Appearances:

John Troy
Aaron Shweitzer
Tiffany Troy
Troy Law PLLC
Flushing, NY
*Counsel for Plaintiffs*

A. Michael Weber
Eli Zev Freedberg
Huan Xiong
Kevin K. Yam
Maayan Deker
Littler Mendelson, P.C.
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

On February 3, 2017, Plaintiffs filed a complaint on behalf of a putative class alleging

various violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. and New York Labor

Law § 190 *et seq*., among other claims.  Currently pending are (1) a motion for leave to

substitute Xiaolin Zhang, the administrator of Plaintiff Haiping Wu's estate, for Haiping Wu

("Wu") (Doc. 339 ("Motion to Substitute")), and (2) a cross-motion to dismiss Wu (and any

potential executor of his estate), under Rules 37(b)(2) and 41(b) of the Federal Rules of Civil

Procedure, and for sanctions against Plaintiffs' counsel, Troy Law, PLLC, (Doc. 348

("Cross-Motion to Dismiss" or "Cross-Motion")).

Now before me is the thorough and well-reasoned Report & Recommendation (the

"Report") of the Honorable Valerie Figueredo, United States Magistrate Judge, in which she

recommends (1) granting Plaintiffs' Motion to Substitute, and (2) granting Defendants'

Cross-Motion to Dismiss.  (Doc. 375 ("Report").)  Judge Figueredo also recommends that I order

Troy Law, PLLC ("Troy Law") pay Defendants' reasonable attorneys' fees and costs, pursuant

to Rule 37(b)(2), incurred in connection with their work on the pending motions.

For the following reasons, I adopt the Report, save for its recommendation that sanctions

be imposed under Rule 37(b)(2).  I conclude that sanctions under Rule 37(b)(2) are not justified

because, although Plaintiffs have dragged their feet with respect to their discovery obligations,

they have not failed to comply with a court order.  Although I depart from the Report in this one

respect, I adopt Judge Figueredo's recommendation to dismiss Wu under Rule 41(b).  I also

conclude that sanctions are warranted under my inherent power to manage affairs related to cases

pending before me.

The Report's detailed account of the facts and procedural history, to which no party

objects, is incorporated by reference.  (*See* Report at 2–5.)

## I.    <u>Legal Standard</u>

After a magistrate judge has issued a report and recommendation, a district court may

"accept, reject, or modify, in whole or in part, the findings or recommendations made by the

magistrate judge." 28 U.S.C. § 636(b)(1).  "To accept the report and recommendation of a

magistrate [judge], to which no timely objection has been made, a district court need only satisfy

itself that there is no clear error on the face of the record." *Trs. of Drywall Tapers & Pointers Loc. Union No. 1974 Benefit Funds v. Cite C Corp.*, No. 17-CV-9304, 2019 WL 1745743, at *1 (S.D.N.Y. Apr. 18, 2019) (internal quotation marks omitted).  Where specific objections are made, the court is obligated to review the contested issues de novo.  *See* Fed. R. Civ. P. 72(b)(3). However, when "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments," the court will review the report only for clear error.  *See Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *1 (S.D.N.Y. May 7, 2012) (collecting cases). In other words, "a party is not to be afforded a 'second bite at the apple' when filing objections to a Report and Recommendation, as the goal of the federal statute providing for the assignment of cases to magistrate[] [judges] is to increase the overall efficiency of the federal judiciary." *Michaud v. Nippon Cargo Airlines, Co.*, No. 09-CV-3375, 2011 WL 5402642, at *1 (E.D.N.Y. Nov. 7, 2011) (internal quotation marks and alterations omitted).

## II.    **Discussion**

Plaintiffs raise four objections to the Report.  First, Plaintiffs object to the Report's recommendation that I find the Cross-Motion to Dismiss timely.  (Doc. 379 ("Objections") at 1.) Second, Plaintiffs object to the Report's recommendation that I award Defendants the reasonable fees and costs they incurred in opposing the Motion to Substitute and drafting the Cross-Motion. (*Id.* 1–2.)  Third, Plaintiffs object to the Report's recommendation that I dismiss Wu under Rules 37(b)(2) and 41(b).  (*Id.* 2.)  Fourth, Plaintiffs object to the Report's recommendation that I find that they acted in bad faith.  (*Id.* 3.)  Neither party objects to the Report's recommendation that the Motion to Substitute be granted.  Accordingly, I review de novo the Report's recommendation to grant the Cross-Motion to Dismiss, and review for clear error its unobjected-to recommendation to grant the Motion to Substitute.

3

### A.    *Cross-Motion to Dismiss*

#### 1.  The Cross-Motion to Dismiss is Timely

I first consider Plaintiffs' objection to the Report's recommendation that I find the

Cross-Motion to Dismiss timely.  (Objections at 1.)  Because the arguments made in support of

this objection mirror the arguments Plaintiffs made in their brief in opposition to the

Cross-Motion, I review the objection only for clear error.  *See Time Square Foods Imports LLC*

*v. Philbin*, No. 12-CV-9101, 2014 WL 521242, at *2 (S.D.N.Y. Feb. 10, 2014) ("Because

defendants' objections simply rehash their original arguments, the Court reviews the Report for

clear error."); *Cordero v. Astrue*, No. 11-CV-5020, 2013 WL 3879727, at *3 (S.D.N.Y. July 29,

2013) (same).  Having found no error, clear or otherwise, I adopt the Report's recommendation

that the Cross-Motion is timely.

#### 2.  Sanctions Against Troy Law for its Discovery Misconduct are Appropriate

In their next objection, Plaintiffs argue that Judge Figueredo erred in awarding

Defendants reasonable fees and costs, under Rule 37(b)(2), for the work they performed in

connection with the pending motions.  (Objections at 1.)  Specifically, Plaintiffs contend that this

sanction is inappropriate because, in filing the Motion to Substitute, they were simply following

my prior orders.  (*Id.*)  Under Rule 37, a court may impose sanctions for discovery-related

abuses.  Fed. R. Civ. P. 37(b).  Although courts have broad discretion in sanctioning discovery

misconduct, a threshold requirement for Rule 37(b)(2) sanctions is the existence of a court order.

*Id.*  "An order enforceable under Rule 37(b) need not, however, have been issued under a

particular rule, so long as its effect was to require a party 'to provide or permit discovery.'"  *Trs.*

*of Mosaic & Terrazzo Welfare, Pension, Annuity, & Vacation Funds v. Elite Terrazzo Flooring,*

*Inc.*, No. 18-CV-1471, 2020 WL 1172635, at *5 (E.D.N.Y. Feb. 20, 2020) (quoting Fed. R. Civ.

P. 37(b)(2)(A)), *report and recommendation adopted*, No. 18-CV-1471, 2020 WL 1166616

(E.D.N.Y. Mar. 11, 2020); *see also Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363

(2d Cir. 1991) ("The language of Rule 37(b)(2) requires a prior order, but does not by its terms

specifically require an order issued pursuant to Rule 37(a)." (citation omitted)).  As an initial

matter, I disagree with Plaintiffs that my prior orders in this case preclude me from sanctioning

them for their discovery misconduct.  Nonetheless, I conclude that the imposition of sanctions

under Rule 37(b) is not warranted because neither Defendants nor the Report identify a specific

order with which Plaintiffs failed to comply, and I could not locate such an order myself.

Accordingly, I depart from the Report's conclusion that sanctions are appropriate under Rule

37(b).

Separate from Rule 37(b), however, I have inherent power to impose sanctions in

response to abusive litigation practices.  *See Residential Funding Corp. v. DeGeorge Fin. Corp.*,

306 F.3d 99, 106–07 (2d Cir. 2002).  "Because of the potency of the court's inherent power,

courts must take pains to exercise restraint and discretion when wielding it."  *DLC Mgmt. Corp.

v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998).  Accordingly, the Second Circuit has

required a finding of "bad faith" before sanctions can be imposed under the inherent-power

doctrine, which must be shown by (1) "clear evidence that the challenged actions are entirely

without color," and (2) "are taken for reasons of harassment or delay or for other improper

purposes."  *United States v. Int'l Brotherhood of Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991)

(internal quotation marks and alterations omitted).  For the reasons explained *infra* in Section

IV.A.4, I conclude that Defendants should be awarded attorneys' fees and costs in connection

with their opposing the Motion to Substitute and drafting and filing the Cross-Motion to Dismiss.

### 3.  Haiping Wu is Dismissed for Failure to Prosecute Under Rule 41(b)

Plaintiffs next object to the Report's recommendation that Wu be dismissed for failure to prosecute under Rule 41(b).  "A plaintiff has a duty to advance his case diligently and the failure to do so may result in dismissal." *Moreno v. Jeung*, 309 F.R.D. 188, 190 (S.D.N.Y. 2015).  The Second Circuit has emphasized that dismissal for failure to prosecute is a "harsh remedy to be utilized only in extreme situations." *Minnette v. Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993) (internal quotation marks omitted).  "Nonetheless, the authority to invoke it for failure to prosecute is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982).

When considering whether to dismiss a case for failure to prosecute, courts must consider the following five, non-dispositive factors:  "(1) whether the plaintiff's failure to prosecute caused a delay of significant duration; (2) whether the plaintiff was given notice that further delay would result in dismissal; (3) whether the defendant was likely to be prejudiced by further delay; (4) the balance between alleviating court calendar congestion and the plaintiff's right to an opportunity to be heard; and (5) the efficacy of lesser sanctions." *Lopez v. Pichardo 2230 Rest. Corp.*, 734 F. App'x 16, 18 (2d Cir. 2018) (internal quotation marks omitted).

Judge Figueredo carefully considered each factor in recommending dismissal.  Although Plaintiffs object to Judge Figueredo's conclusion, they fail to identify any legal error in the Report.  Instead, they repeat many of the same arguments found in their opposition to the Cross-Motion to Dismiss.  I have nonetheless conducted de novo review and conclude that the above-referenced factors support dismissal of Wu's claims.

As to the first factor, there is no fixed period that must pass before a plaintiff's failure to prosecute becomes substantial enough to warrant dismissal.  *See Cain v. Simon & Schuster*, No.

6

11-CV-4460, 2013 WL 1608620, at *3 (S.D.N.Y. Apr. 15, 2013). However, delays of more than a year are generally sufficient. *See, e.g.*, *Hunter v. N.Y. State Dep't of Corr. Servs.*, 515 F. App'x 40, 42–43 (2d Cir. 2013) (affirming district court's Rule 41(b) dismissal after a fourteen-month delay). Here, Plaintiffs failed to comply with their discovery obligations for over three years. On January 11, 2018, Defendants served Plaintiffs with a discovery deficiency letter, which included deficiencies related to Wu. (Doc. 350 ¶ 4.) Defendants, however, did not respond to the letter until October 2021 and, even then, failed to address any of the issues related to Wu. (*Id.* ¶ 10.) This significant delay strongly favors dismissal.

With respect to the second factor, courts are generally expected to warn litigants that further delay or non-compliance could lead to dismissal. *See Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005). However, such warnings are not required. *See Link v. Wabash R.R.*, 370 U.S. 626, 633 (1962) ("[A] District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so."). Here, I previously dismissed Plaintiffs Tong Wei Wu and Weiting Zhao, under Rules 37(d) and 41(b), due to Troy Law's failure to schedule their depositions. (Doc. 321.) This misconduct—which is not unlike the discovery lapses at issue here—provided Troy Law with notice (indeed, evidence) that its continued dilatory discovery conduct could result in further terminating sanctions.

With regard to the third factor, there is a rebuttable presumption that a defendant was prejudiced where "the delay was lengthy and inexcusable." *U.S. ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 256 (2d Cir. 2004). Because Plaintiffs have offered no colorable reason for failing to respond to Defendants' discovery requests for over three years, prejudice is presumed. *See Hibbert v. Apfel*, No. 99-CV-4246, 2000 WL 977683, at *3 (S.D.N.Y. July 17, 2000) (presuming prejudice where the plaintiff had been inaccessible for six months).

In considering the fourth factor, I must balance the need to alleviate court-calendar congestion and the plaintiff's right to an opportunity to be heard. *Jackson v. City of New York*, 22 F.3d 71, 74 (2d Cir. 1994). This factor tips in favor of dismissal. Troy Law, especially with respect to Wu's claims, has shown little interest in prosecuting this case. Indeed, it has repeatedly snubbed opportunities to be heard by failing to meaningfully participate in the discovery process. (Doc. 350 ¶¶ 3–15.) Accordingly, I find that dismissing Wu's claims is "vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Lyell*, 682 F.2d at 42.

Finally, lesser sanctions are not appropriate here. As explained above, Troy Law has repeatedly flouted its discovery obligations. Indeed, its delay tactics have already led to the dismissal of two other named Plaintiffs. (Doc. 321.) On this record, I have no trouble concluding that any lesser sanction would not be sufficient to remedy Troy Law's misconduct.

Accordingly, I ADOPT Judge Figueredo's recommendation to DISMISS Wu for failure to prosecute pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.

### 4. Troy Law Acted in Bad Faith

Plaintiffs also object to Judge Figueredo's recommendation that I adopt her finding that Troy Law acted in bad faith. Although Judge Figueredo did not make her bad-faith finding in connection with a court's inherent power to sanction an attorney, the finding is equally relevant in that context. I review this aspect of the Report de novo.

"A federal district court possesses broad inherent power to protect the administration of justice by levying sanctions in response to abusive litigation practices." *Penthouse Int'l, Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 386 (2d Cir. 1981). "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501

U.S. 32, 44 (1991).  To impose sanctions pursuant to its inherent power, a court must find that

"(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad

faith, *i.e.*, motivated by improper purposes such as harassment or delay."  *Schlaifer Nance & Co.*

*v. Est. of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999).

   I first consider whether there was a "colorable basis" for Troy Law's assertion, in

December 2021, that Wu would be available for a deposition in January 2022.  (Doc. 265.)

"Conduct is entirely without color when it lacks any legal or factual basis."  *Wolters Kluwer Fin.*

*Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009).  That is precisely the case here.

When Troy Law asserted that Wu would be available for a deposition in January 2022, Wu had

been dead for over two months.  Although this is but one misstatement, I "need not wait until a

party commits multiple misrepresentations before [I] may put a stop to the party's chicanery."

*Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 991 F.3d 361, 368–69 (2d Cir. 2021).

   I next consider whether the statement was made in bad faith.  Bad faith requires a

showing that the party acted for a "improper purpose," supported by a "high degree of specificity

in the factual findings."  *Scivantage*, 564 F.3d at 114.  Additionally, bad faith may be inferred

when "a party undertakes frivolous actions that are completely without merit."  *Huebner v.*

*Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (internal quotation marks omitted).

Here, the record amply supports a finding of bad faith.  Troy Law concedes that it had not

confirmed the dates with Wu before representing that he would be available to sit for a

deposition in January 2022.  (Objections at 3.)  Such a knowing and intentional

misrepresentation fits squarely within the definition of bad faith.  *See Mata v. Avianca, Inc.*, No.

22-CV-1461, 2023 WL 4114965, at *14 (S.D.N.Y. June 22, 2023) ("A false statement of

knowledge can constitute subjective bad faith where the speaker knew that he had no such

knowledge." (internal quotation marks omitted)).  Troy Law nonetheless insists that it "tried to

present the truth to [D]efendants and the [C]ourt."  (Objections at 3.)  This explanation, however,

is patently baseless.  *See Roberts v. Bennaceur*, 658 F. App'x 611, 615 (2d Cir. 2016) (summary

order) (imposing sanctions based on numerous "misrepresentations" and "inadequate

explanations" that demonstrated "bad faith throughout these proceedings" (internal quotation

marks omitted)).  Indeed, Troy Law has a pattern of shirking many other of its discovery

obligations in this case.  For instance, it used similar delay and obstructionist tactics when it

represented to Defendants in late November that it would supplement the discovery related to

Wu—who had been dead for over a months—"within the next two weeks."  (Doc. 350 ¶ 14.)  No

such discovery was forthcoming.  Accordingly, I conclude that sanctions in the form of

reasonable fees and costs incurred by Defendants in opposing the Motion to Substitute and

drafting the Cross-Motion are warranted.

### B.    *Motion to Substitute*

Because neither party has objected to the Report's recommendation granting the Motion

to Substitute, I have reviewed this aspect of the Report for clear error.  *Cite C Corp.*, 2019 WL

1745743, at *1.  Finding no error, let alone clear error, I ADOPT the Report's recommendation

and GRANT the Motion to Substitute.

### III.    Conclusion

For the foregoing reasons, I ADOPT the Report with the above-referenced modification.

Defendants shall submit to Judge Figueredo an affidavit, with supporting documentation,

detailing their attorneys' fees and costs, no later than 30 days from the date this Opinion & Order

is entered on the docket.  The Clerk of Court is respectfully directed to terminate Plaintiff

Xiaolin Zhang, the administrator of Plaintiff Haiping Wu's estate, and to close the motions

pending at Docs. 339 and 348.

SO ORDERED.

Dated: April 1, 2025
        New York, New York

_____
        Vernon S. Broderick
        United States District Judge